UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES INGRAM,

     Petitioner,

v.                                      CASE NO. 2:15-cv-11074

                                          HON. DAVID M. LAWSON

JOE BARRETT,

                                          MAG. DAVID R. GRAND

     Respondent.

_____

**ANSWER IN OPPOSITION TO AMENDED
PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction ................................................................................1

Statements in Compliance with Habeas Rule 5(b) ...................4

    A.    Statute of Limitations..............................................4

        1.    Argument .......................................................4

    B.    Exhaustion.............................................................11

    C.    Procedural Default................................................11

    D.    Non-retroactivity Doctrine...................................11

Statement of the Case ...............................................................12

    A.    Trial Facts ............................................................12

    B.    Procedural History ..............................................17

Standard of Review Pursuant to AEDPA..................................20

Argument ..................................................................................30

I.    Under the highly deferential standards of *Jackson v. Virginia* and 28 U.S.C. § 2254(d), the state appellate court rejection of Ingram's claim that the evidence in support of his convictions was insufficient was not objectively unreasonable. ..................................................................30

II.    Ingram's claim that his convictions were against the great weight of the evidence is not cognizable. .......................39

III.    The state appellate court decision affirming the trial court's refusal to admit evidence of the victim's prior sexual activities on the basis of the Michigan rape-shield law did not deprive Ingram of a fair trial where the only issue at trial was whether the sex between Ingram and the victim was consensual. ................................................................42

IV.    A claim that one is actually innocent is not cognizable on habeas review and the state appellate court rejection of Ingram's *Napue* claim was not objectively unreasonable where Ingram has not shown perjury occurred much less prosecutor knowledge of perjury ........................................................ 47

V.    The state appellate court rejection of Ingram's claim that convicting him of CSC III and CSC IV violated double jeopardy rights was not objectively unreasonable where each crime contains an element the other does not. ............................. 53

VI.-VIII.    Under the highly deferential standards of *Strickland v. Washington* and 28 U.S.C. § 2254(d), the state court rejection of Ingram's claim that counsel was ineffective was not objectively unreasonable. ................................................... 58

IX.    Challenges to the scoring of state sentencing guidelines are not cognizable on habeas review ........................................................ 68

X.    Under the highly deferential standards of *Strickland v. Washington* and 28 U.S.C. § 2254(d), the state court rejection of Ingram's claim that appellate counsel was ineffective was not objectively unreasonable because none of the omitted issues was reasonably likely to lead to a different result if raised on direct appeal. ................................................... 71

Conclusion............................................................................................. 78

Relief .................................................................................................... 83

Certificate of Service ............................................................................ 84

## INTRODUCTION

On July 10, 2008, Petitioner Charles Ingram, who was in his late 40s, restrained 17-year-old BJ and groped her breasts, touched her vaginal area over her clothes and then pulled her pants down and penetrated her vagina with his penis.

As a result of a 4-day jury trial in Saginaw County held in late 2011, Ingram was convicted of one count of third-degree criminal sexual conduct (CSC III), Mich. Comp. Laws § 750.520d(1)(b) (sexual penetration achieved via force or coercion), and two counts of fourth-degree criminal sexual conduct (CSC IV), Mich. Comp. Laws § 750.520e(1)(b) (sexual contact achieved via force or coercion).

The State now holds Ingram in custody in the Michigan Department of Corrections where he is serving a 7-15 year sentence for CSC III and 13 to 24 month sentences for his CSC IV convictions.

Ingram commenced an action under 28 U.S.C. § 2254 by filing a petition with this Court in March of 2015.  After a "stay and abey," Ingram has returned to this Court and filed an amended petition on February 3, 2017, which raises the following ten claims:

1

I.    There was insufficient evidence to justify a reasonable juror concluding that all elements of the crime of criminal sexual conduct in the third degree and fourth degree was established beyond a reasonable doubt and all the state courts demonstrated an unreasonable application of precedential federal law set forth in *Jackson v. Virginia.*

II.   Petitioner's verdict was against the great weight of the evidence and the state courts demonstrated an unreasonable determination of the facts of the case.

III.  Petitioner's rights to a fair trial were infringed upon by the improper denial of the motion in limine relative to the introduction of evidence of the victim's prior sexual history with third parties and in particular her prior claims of pregnancy.

IV.   Petitioner's conviction is a product of one being incarcerated whom is actually innocent [as] the acts that occurred Petitioner holds were consensual and that Petitioner did not have the malice intent or the mens rea of the act that he was convicted of.  The prosecution failed to establish these specific acts of intent causing a miscarriage of justice also some testimony was a product of perjury and resulting in a *Napue* violation and one was convicted by the violation and denied a fair trial.

V.    Defendant's convictions should be vacated and he should be granted a new trial because he was subjected to double jeopardy in violation of the Fifth Amendment of the United States Constitution, where he was subjected to multiple prosecutions for the same offense.

VI.   Defendant did not receive the effective assistance of trial counsel when counsel failed to object when the court gave a jury instruction that permitted the jury to find him guilty even if they were not in unanimous agreement on each charge.

VII.   Defendant did not receive the effective assistance of trial counsel when counsel failed to impeach [the] complainant with her preliminary examination testimony, when she testified at his trial, and when counsel failed to point out the discrepancies between complainant's preliminary examination testimony and her trial testimony, where it came out at trial at her closing argument.

VIII.   Defendant did not receive the effective assistance of trial counsel when counsel failed to do a proper investigation and present facts contained in documents that negated [the] complainant's version of events, and therefore, she should not have been believed.

IX.   The trial court improperly scored the offense variable 13 and prior record variable 7 making the guidelines incorrect in violation of Defendant's Sixth and Fourteenth Amendment rights.

X.   Defendant did not receive the effective assistance of appellate counsel when counsel did not raise the issues he now raises.

The fact that Ingram raises ten claims brings to mind a recent observation from the Sixth Circuit: "When a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortgage v. Chicago Title Ins.*, 692 F.3d 507, 509 (6th Cir. 2012).

Ingram raised a claim in his motion for relief from judgment that Michigan's Sex Offender Registration Act is unconstitutional as cruel and unusual punishment.  Ingram did not include this claim in his

original or amended habeas petition.  This claim is therefore now abandoned.  *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief).

Should the Court interpret the amended petition to be raising any different claim, the State requests an opportunity to file a supplemental pleading.

The State now answers the amended petition and requests that it be denied.

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

#### 1.    Argument

The State asserts that consideration of claims IV, V, IX and X are barred because they were first raised after expiration of AEDPA's statute of limitations.

AEDPA provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  If a

claim is not filed within the one-year statute of limitations, it must be

dismissed.  *See Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009).

When this Court granted its "stay and abey" it stated that Ingram

had filed his habeas petition with only 11 days remaining in the statute

of limitations:

> The Michigan Supreme Court denied the petitioner's
> application for leave to appeal on December 23, 2013. That
> decision became final on March 23, 2014, when the time
> during which the petitioner could have filed a petition for a
> writ of certiorari in the United States Supreme Court
> expired. The one-year limitations period commenced on the
> following day, March 24, 2014. *See Bronaugh v. Ohio*, 235
> F.3d 280, 284–85 (6th Cir. 2000) (holding that the last day
> on which a petitioner can file a petition for a writ of
> certiorari in the United States Supreme Court is not counted
> toward the one-year limitations period applicable to habeas
> corpus petitions). The petitioner filed the present petition on
> March 16, 2015, eleven months and twenty days after his
> conviction became final.

*Ingram v. Barrett*, 2015 WL 1966470, at *3 (E.D. Mich. April 29,
2015).

This Court's April 29, 2015, order further allowed Ingram to

return to state court to exhaust a fourth claim of ineffective assistance

of counsel.  *Id.*

Ingram's motion for relief from judgment contained a claim that

counsel had been ineffective but also included additional claims, current

claims: IV (actual innocence, *Napue* claim), claim V (double jeopardy), claim IX (misscoring of guidelines), and claim X (ineffective assistance of appellate counsel).

It is the State's position that consideration of claims IV, V, IX and X is barred because they were filed in state court after expiration of AEDPA's limitations period. According to the Register of Actions these claims were first filed in state court as part of Ingram's motion for relief from judgment on June 8, 2015.

This Court's April 29, 2015, stay and abey order noted that Ingram only had 11 days left before the limitations period would expire and Ingram filed claims IV, V, IX and X over five weeks after issuance of the stay and abey order. In other words, Ingram did not file claims IV, V, IX and X in state court within the 11-day window he had remaining before expiration of AEDPA's limitations period.

When the habeas statute of limitations has already expired, a properly filed motion for relief from judgment "does not reset the date from which the one-year statute of limitations begins to run." *Johnson v. Hendricks*, 314 F.3d 159, 161–62 (3d Cir. 2002); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). This is because there is no remaining

6

period to be tolled.  *Smith v. Stegall*, 141 F. Supp. 2d 779, 782–83 (E.D.
Mich. 2001).  A habeas petition filed outside the proscribed time period
must be dismissed.  *See Isham v. Randle*, 226 F.3d 691, 694–95 (6th Cir.
2000) (dismissing case filed 13 days late).

The fact that Ingram filed his habeas petition eleven months and
twenty days after his conviction became final did not suspend the
running of the one-year limitations period under 28 U.S.C. § 2244(d)(2).
*See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).  And, while the stay
and abey order may have allowed Ingram to file an ineffective
assistance of counsel claim in a motion for relief from judgment, it did
not authorize Ingram to file any other additional claims.

Thus, claims IV, V, IX and X were not timely filed unless they
"relate back" to Ingram's original petition.  Under Federal Rule of Civil
Procedure 15, an amended pleading "relates back" to the original
pleading only if they are tied to the "same core of operative facts."  *See
Mayle v. Felix*, 545 U.S. 644, 664 (2005).  "An amended habeas petition .
. . does not relate back (and thereby escape AEDPA's one-year time
limit) when it asserts a new ground for relief supported by facts that
differ in both time and type from those the original pleading set forth."

*Id.* at 650.  As explained by the Supreme Court, if "claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."  *Id.* at 662.  The *Mayle* Court cautioned not to read the "conduct, transaction, or occurrence" requirement, so broadly as to render meaningless the statute of limitations.  *Id.* at 662–64.  Turning to the facts of the case, the Court concluded that the petitioner's untimely amended petition did not relate back to the timely original petition because the two petitions "targeted separate episodes": the pretrial interrogation of the witness, and the petitioner's own interrogation, which occurred "at a different time and place."  *Id.* at 660.

Because claims IV, V, IX and X raised in the amended petition do not share a common core of operative facts with claims I, II, III raised in the original petition, claims IV, V, IX and X are barred by the one-year limitations period.  *See Pinchon v. Myers*, 615 F. 3d 631, 643 (6th Cir. 2010).  *See also Watkins v. Deangelo-Kipp*, __F.3d __, 2017 WL 87019 (6th Cir. Jan. 10, 2017).  (The *Watkins* decision was originally released as an unpublished opinion filed on January 10, 2017.  The Sixth Circuit

subsequently designated the opinion as one recommended for full-text publication).  In *Watkins* the Sixth Circuit found that the petitioner's amended petition did not relate back to his original petition.  The Court said "Counsel's conduct in investigating before trial and presenting a defense to the jury during trial is a distinct 'episode' from counsel's conduct in not requesting that the judge order a fifth psychiatric evaluation during trial."  *Id*. at *4.

AEDPA's limitations period is not jurisdictional, so it may be tolled for equitable reasons.  *Holland v. Florida*, 560 U.S. 631, 645–49 (2010).  A petitioner is entitled to equitable tolling only if he establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Id*. at 649 (citation omitted).  Equitable tolling is used "sparingly" by the federal courts.  *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).  A petitioner has the burden of demonstrating entitlement to equitable tolling.  *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *See Jurado v. Burt*, 337

F.3d 638, 642 (6th Cir. 2003).   "Absent compelling equitable considerations, a court should not extend limitations by even a single day."  *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted).

This Court should find that Ingram is not entitled to equitable tolling.  Equitable tolling also should not apply because Ingram did not diligently pursue relief.  *See Jurado*, 337 F.3d at 643; *Morgan v. Money*, 2000 WL 178421 (6th Cir. Feb. 8, 2000) (holding that a petitioner must show that he exercised due diligence in pursuing § 2254 relief to support equitable tolling).  The Sixth Circuit Court of Appeals has held that when a petitioner's actions demonstrate a lack of diligence equitable tolling of the one-year limitations period is foreclosed. *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003).  Nor has Ingram presented a credible claim of actual innocence in order to avoid application of the limitations period.  *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *Souter v. Jones*, 395 F.3d 577, 588–90 (6th Cir. 2005).  As the Court explained in *McQuiggin*, "tenable actual-innocence gateway pleas are rare."  133 S. Ct. at 1928.

Consequently, this Court should find that consideration of claims IV, V, IX and X, claims not mentioned in Ingram's original habeas petition, is barred on account of the expiration of AEDPA's limitations period.

Nevertheless, because this Court may find it easier to deny relief on the merits, the State will briefly respond to the merits of these claims below. *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (when an analysis of whether a claim is barred by the statute of limitations adds complexity to a case the court can cut to the merit).

### B.    Exhaustion

The State is not arguing that any of Ingram's habeas claims are barred by the failure to exhaust a claim for which a state court remedy still exists.

### C.    Procedural Default

The State asserts that Ingram has procedurally defaulted claims VI, VII and VIII (ineffective assistance of trial counsel) as explained below.

### D.    Non-retroactivity Doctrine

The State is not arguing that any of Ingram's habeas claims are barred by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

### A.    Trial Facts

When this case was on direct appeal the Saginaw County

Prosecutor's Office filed the following statement of facts:

> The victim, seventeen-year-old [BJ], knew Defendant and
> considered him her uncle. (TT2 35, 36) Her father worked for
> Defendant who owned several properties. On occasion, she
> assisted her father with those properties and sometimes got
> paid. (TT2 37) On July 10, 2008, the victim needed some
> money to go to Michigan Adventures. (TT2 38-39) She
> decided to work for Defendant at his property on Reed
> Street. There, she picked up carpet tacks and painted.
> Eventually, Defendant told her he had some work for her in
> the basement.
>
> She accompanied him into the basement. (TT2 39)
> Defendant directed her to the back room which contained
> some cabinets. (TT2 40) Defendant grabbed her hands and
> placed them behind her back. (TT2 40, 41, 52) He then
> pushed her over a cabinet. (TT2 40, 42) Defendant squeezed
> her breasts and touched her vaginal area over her clothes.
> (TT2 41, 42) He pulled the victim's pants down with force
> and inserted his penis into her vagina from behind. (TT2 40,
> 42) Defendant said, "[Y]ou know you want this[.] [Y]ou've
> been wantin' it. [D]on't act like you don't want it[.] [O]h,
> god." (TT2 40, 43) The victim told Defendant no and was
> yelling for him to stop. (TT2 40, 53) Defendant ejaculated on
> her clothes. (TT2 42-43)
>
> Defendant stopped because he heard Vercie Cooper, the
> victim's father's girlfriend, knocking at the front door. (TT2
> 43, 54) The victim got dressed and went outside. (TT2 43)
> Cooper saw the victim exit from the basement, followed by
> Defendant. (TT2 96, 107) The victim was moving fast to the
> point of almost knocking Cooper over. The victim looked

upset. (TT2 96) The victim headed directly for the front door. (TT2 97) The victim's father arrived at the Reed Street home with his Uncle Willie.

The victim was following Cooper everywhere Cooper went. From the victim's behavior and from the look on her face, her father knew something was wrong. (TT2 75) Even Uncle Willie thought something was wrong with the victim. (TT2 75-76)

The victim told Cooper to take her home. (TT2 43, 75-76) During the drive home, the victim told Cooper what Defendant had done and told Cooper not to tell anyone, especially her dad because she was afraid he would be upset and angry at Defendant. (TT2 43, 71) The victim asked Cooper to take her to the hospital, but Cooper did not know if the victim could consent to hospital care. (TT2 58) When the victim arrived home, she immediately showered and stayed in her room for the rest of the day and did not eat. To her father, the victim was acting weird. (TT2 44, 76)

Later in the evening, Defendant arrived at the victim's house and watched two movies. (TT2 59, 60, 76-77, 88) Defendant usually did not watch television with them, and he never stayed too long. (TT2 60, 77, 100-101) During this time, the victim was very quiet. (TT2 77) She only stayed to watch one movie. (TT2 88, 101) During that movie, Defendant mostly stared at the victim. (TT2 90) Everywhere the victim went, Defendant was right behind her. (TT2 78) Finally, the victim allowed Cooper to tell her father. Shortly before midnight, Cooper and her father took her to the hospital. (TT2 44)

Dr. McLean examined the victim. (TT2 112, 113) The victim was upset: tearful, crying, and breathing very rapidly. (TT2 114) She told the doctor she was raped by a family friend named Ingram in his home. He grabbed her from behind and said, "I wanted this for a long time." He held her arms back, pulled her pants down, and penetrated her vaginally from behind. McLean performed a physical exam and completed a

rape kit. (TT2 115) She found a bruise on the victim's left arm. (TT2 116)

Detective Fink interviewed the victim on July 16, 2008. (TT2 122, 124) The victim gave him her clothing she was wearing during the rape. (TT2 45, 125) The clothing was taken to the crime laboratory. (TT2 125) The parties stipulated to the laboratory's report that the DNA found in the semen from the victim's pants positively matched Defendant's DNA. (TT2 126; TT3 4-5)

On July 17, Fink interviewed Defendant. (TT2 124) Defendant denied having sex with the victim at the Reed Street house. (TT2 127) He said he did not rape the victim. (TT2 129) He did not pay her for sex. (TT2 130) The victim was like a daughter to him. (TT2 129-130) Overall, Defendant denied 22 times that he had any sexual contact with the victim. (TT2 127-128) Fink asked him if the semen found on the victim's clothes would be his or would match his DNA. (TT2 128) Defendant answered, "[N]one, none, no, sir." (TT2 128-129)

Defendant testified he had had consensual sex with the victim up to two months before the incident. (TT3 42-43) On the first occasion, he rubbed the victim's vagina and paid her $15 when she was removing ingrown hairs from his face. (TT3 43-44, 46-47) A month later, the victim was again removing his ingrown hairs and allowed him to finger her, and for doing that, he paid her $10. (TT3 45) On the other hand, the victim never had sexual intercourse previously with Defendant, and she was never paid by Defendant to have sex with him. (TT2 46)

She did not consent to have sex with Defendant on July 10, 2008. (TT2 46-47) In the past, she picked ingrown hairs from Defendant's face, but that did not evolve into sex. Also, she did not have sex with Defendant for $15. (TT2 67)

14

On July 10, the victim came over to do some work because she needed some money. (TT3 12, 14, 18) She was given by Defendant the task of scraping tile in the basement. (TT3 18) While in the basement, they had sex. (TT3 20) The victim unzipped his pants while he pulled down hers. She leaned over a counter. (TT3 21)

She reached for his penis, and he inserted it into her vagina. (TT3 21-22) He ejaculated on the floor. The victim then placed his penis in her vagina a second time. He ejaculated on the floor again and put his penis in her vagina a third time. (TT3 22) The victim never resisted. (TT3 23) Later, he watched two movies with the victim and her father. (TT3 34, 35)

When Defendant was interviewed by Fink, Defendant was terrified and shocked. (TT3 40) He denied raping anyone and denied having sex with the victim from the terror he faced. (TT3 41) Defendant only told the detective what would have made the detective feel good, and he acknowledged he lied to the detective, believing that was his best course of action at getting a fair trial. (TT3 66, 67) (Brief at 1–5.)

The Michigan Court of Appeals accurately summarized the facts

adduced at trial as follows:

Defendant's convictions stem from the sexual assault of "BJ" in the basement of a home that defendant was renovating. BJ testified that her father worked for defendant and that she sometimes accompanied her father and was paid for work that she performed. According to BJ, defendant grabbed her hands and held them behind her back while he pulled her pants down, squeezed her breasts, and vaginally penetrated her with his penis. Defendant testified that the sexual encounter was consensual.

\*\*\*

15

> Here, BJ testified that defendant pushed her over and held
> her hands behind her during the assault.
>
> ***
>
> During a police interview, defendant denied having sexual
> intercourse with BJ, but he testified that he did engage in
> sexual intercourse with her, but that the intercourse was
> consensual.
>
> ***
>
> During questioning regarding defendant's claim that he paid
> BJ for sexual intercourse, defendant testified that women
> usually paid him for sexual intercourse because he knows
> "how to treat a woman."

*People v. Ingram*, No. 309035, 2013 WL 3717793, at *1, 2 (Mich. Ct. App. July 16, 2013).

This appellate court recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Ingram has not demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981). To be an unreasonable determination of the facts, the evidence must be "too powerful to conclude anything but" the contrary of that reached by the state court.

16

*Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).  A federal court "may not characterize . . . state-court factual determinations as unreasonable merely because [it] would have reached a different conclusion in the first instance."  *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

The State opposes any factual assertions made by Ingram that are not directly supported by—or consistent with—the state court record, because he has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

## B.   Procedural History

Ingram was convicted of one count of CSC III and two counts of CSC IV.  The trial court sentenced him to 7-15 years for CSC III and to concurrent terms of 13-24 months for the CSC IV convictions.

Following his convictions and sentences, Ingram filed with the trial court a motion for directed verdict of acquittal and a motion for a new trial.  The trial court denied the motions.  *People v. Ingram*, No. 08-031317-FH, Saginaw County Cir. Ct. Order (Oct. 3, 2012).

17

Ingram subsequently filed a claim of appeal in the Michigan Court of Appeals, which raised his first three habeas claims.

The Michigan Court of Appeals affirmed Ingram's convictions in an unpublished opinion. *People v. Ingram*, 2013 WL 3717793.

Ingram subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same three claims as in the Michigan Court of Appeals.  The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court.  *People v. Ingram,* 840 N.W.2d 336 (Mich. 2013) (unpublished table decision).

Ingram did not appeal to the United States Supreme Court.  Rather, he filed a petition for habeas relief with this Court on March 20, 2015, along with a motion to stay so Ingram could exhaust a claim that trial counsel had been ineffective.  (Docs. # 1–2.)

This Court entered an order staying the case so Ingram could return to state court and exhaust additional claims.  (Doc. # 5); *Ingram v. Barrett*, 2015 WL 1966470 (E.D. Mich. April 29, 2015).

Ingram returned to the trial court and filed a motion for relief from judgment, which contained habeas claims IV-X and a claim that

18

Michigan's Sex Offender Registration Act is unconstitutional as cruel and unusual punishment.

The trial court denied the motion for relief from judgment on the merits. *People v. Ingram*, No. 08-031317-FH, Saginaw County Cir. Ct. Order (Dec. 1, 2015).

Ingram next filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal because defendant failed to establish that the trial court erred in denying his motion for relief from judgment. *People v. Ingram*, No. 332098 Mich. Ct. App. Order (July 25, 2016).

Ingram applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Mich. Ct. Rule 6.508(D). *People v. Ingram*, 888 N.W.2d 97 (Mich. Jan. 5, 2017) (unpublished table decision).

On February 3, 2017, Ingram returned to this Court with a motion to lift the stay and with an amended petition. (Docs. # 6–7.) This Court subsequently entered an order lifting the stay and requiring the State to respond to Ingram's amended petition. (Doc. # 9.)

## STANDARD OF REVIEW PURSUANT TO AEDPA

Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA).  Recognizing the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights," "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 134 S. Ct. 10, 15, 16 (2013); 28 U.S.C. § 2254(d).

Federal law permits a prisoner held "in custody pursuant to the judgment of a State court" to seek habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Pursuant to § 2254, a federal court must deny habeas relief as to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). And, this standard in § 2254 is "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013) (internal quotation marks and citation omitted). *See Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.").

A state court decision involves an unreasonable application of clearly established Federal law pursuant to § 2254(d)(1) if "the state-court decision identifies the correct governing legal principle in existence at the time," but "unreasonably applies that principle to the facts of prisoner's case." *Pinholster*, 563 U.S. at 182 (internal quotation marks and citation omitted). "A federal court may not overrule a state

court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous." *See, Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam). Habeas "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706–07 (2014). Where "[n]o precedent of [the Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of Supreme Court precedent. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Etherton*, 136 S. Ct. at 1152.

AEDPA restricts the body of law a habeas court may consider. By its terms AEDPA limits the source of law to Supreme Court precedent interpreting the Constitution. 28 U.S.C. § 2254(d)(1). Thus, Supreme Court decisions not based on constitutional grounds, *e.g.*, decisions based on the Court's supervisory powers, are "off the table as far as § 2254(d) is concerned." *Early v. Packer*, 537 U.S. 3, 10 (2002). *See, e.g.,*

*Rushen v. Spain*, 464 U.S. 114, 119 n.4 (1983), characterizing *Shields v. United States*, 273 U.S. 583 (1927), as resting on "non-constitutionally based rules of orderly trial procedure." *See also Buelas v. Wolfenbarger*, 580 F.3d 403, 407 (6th Cir. 2009) (noting that *Castro v. United States*, 540 U.S. 375 (2003), was decided as a matter of the Supreme Court's supervisory power over the lower federal courts, and is not binding on the state courts).

Further, "[c]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations and citations omitted). *See also United States Nat. Bank of Ore. v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 463, n.11 (1993) (emphasizing "the need to distinguish an opinion's holding from its dicta"); *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 352 (2005) ("Dictum settles nothing, even in the court that utters it."). *See further Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *Ross v. Petro*, 515 F.3d 653, 662 (6th Cir. 2008) (explaining that only those parts of a

23

Supreme Court decision that are "integral to the holding" constitute "clearly established" Supreme Court law for purposes of 28 U.S.C. § 2254(d)).

Moreover, "clearly established Federal law" does not include statements in plurality opinions.  When the Supreme Court issues a plurality opinion, i.e., an opinion where no single rationale explaining the result enjoys the assent of five Justices, the "clearly established federal law" for purposes of § 2254(d) is the position "taken by those Members who concurred in the judgments on the narrowest grounds." *See Panetti v. Quarterman*, 551 U.S. 930, 949 (2007), citing *Marks v. United States*, 430 U.S. 188, 193 (1977).

Further under § 2254(d)(1), the relevant Supreme Court precedent includes only the decisions in existence "as of the time the state court renders its decision," not the date of finality.  *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks and emphasis omitted); *see also Pinholster*, 563 U.S. at 182 ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

24

Under § 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Titlow*, 134 S. Ct. at 15 (internal quotation marks and citation omitted). If "[r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Instead, the state court's "application must be objectively unreasonable." *Id.* That distinction creates "a substantially higher threshold" to obtain relief than de novo review. *Id.* "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 565 U.S. 65, 72 (2011) (per curiam).

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). And federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision by the Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim). And, as the Supreme Court recently held, where no Supreme Court cases confront "the specific question presented" by the habeas petitioner, "the state court's decision [cannot] be contrary to any holding from this Court." *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam) (internal quotation marks and citation omitted).

Further, the Supreme Court has specifically warned habeas courts that, "[b]y framing [Supreme Court] precedents at [too] high [a] level of

generality, [it] could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.' "  That "approach would defeat the substantial deference that AEDPA requires" be given to state-court decisions. *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam).

The burden of providing a habeas petitioner with a new trial "should not be imposed unless *each* ground supporting the state court decision is examined and found to be unreasonable under AEDPA." *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012) (emphasis in original). Moreover, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Harrington*, 562 U.S. at 102.  This standard protects against intrusion of federal habeas review upon "both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Id*. at 103 (internal quotation marks and citation omitted).

A federal court must refrain from issuing a writ "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks and citation omitted).  To clear the § 2254(d) hurdle, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.  "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

The Supreme Court has also instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme Court of California's summary denial of Hinojosa's petition was therefore on the merits.").  "[S]tate-court decisions [must] be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (internal quotation marks and citation omitted).  "Section 2254(d) reflects the view that

habeas corpus is a guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal quotation marks and citation omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citation omitted).

Finally, the petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

## I.  Under the highly deferential standards of *Jackson v. Virginia* and 28 U.S.C. § 2254(d), the state appellate court rejection of Ingram's claim that the evidence in support of his convictions was insufficient was not objectively unreasonable.

Ingram's first habeas claim is that the evidence supporting his convictions was insufficient.

The Michigan Court of Appeals considered and denied this claim on the merits by applying the correct constitutional standard in a manner that was not objectively unreasonable:

> Defendant's convictions stem from the sexual assault of "BJ" in the basement of a home that defendant was renovating. BJ testified that her father worked for defendant and that she sometimes accompanied her father and was paid for work that she performed. According to BJ, defendant grabbed her hands and held them behind her back while he pulled her pants down, squeezed her breasts, and vaginally penetrated her with his penis. Defendant testified that the sexual encounter was consensual.

> Defendant first argues that the evidence was insufficient to establish that he used force or coercion to accomplish the sexual assault and that, accordingly, the trial court erred by denying his motion for a directed verdict of acquittal. We review de novo a challenge to the sufficiency of the evidence. *People v. Ericksen*, 288 Mich.App 192, 195; 793 NW2d 120 (2010). We examine the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that every essential element was proven beyond a reasonable doubt. *Id*. at 196. We apply the same standard in reviewing the trial court's denial of a

motion for a directed verdict of acquittal. *People v. Hartuniewicz*, 294 Mich.App 237, 242; 816 NW2d 442 (2011). Circumstantial evidence and reasonable inferences that may be drawn from that evidence can constitute sufficient proof of the elements of an offense. *People v. Carines*, 460 Mich. 750, 757; 597 NW2d 130 (1999). The inferences to be drawn from the evidence and the weight to accord to those inferences are matters for the trier of fact to determine. *People v. Hardiman*, 466 Mich. 417, 428; 646 NW2d 158 (2002). The trier of fact must also determine questions involving witness credibility. *People v. Harrison*, 283 Mich.App 374, 378; 768 NW2d 98 (2009).

The prosecution may establish the element of force or coercion by showing that the defendant overcame the victim "through the actual application of physical force or physical violence." MCL 750.520b(1)(f)(i); MCL 750.520e(1)(b)(i); see also MCL 750.520d(1)(b). "[T]he prohibited 'force' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v. Carlson*, 466 Mich. 130, 140; 644 NW2d 704 (2002).

Here, BJ testified that defendant pushed her over and held her hands behind her during the assault. Defendant contends that the assault could not have occurred as BJ described because he "did not have enough available hands" to restrain BJ while forcibly touching her and removing her clothes as she maintained. Thus, in essence, defendant contends that BJ's version of events is "patently incredible or defies physical realities." *People v. Lemmon*, 456 Mich. 625, 643; 576 NW2d 129 (1998) (quotation marks and citation omitted). Defendant also argues that, considering the size of the house, someone would have heard BJ scream as she claimed she did.

Nothing about BJ's description of the attack can be characterized as "patently incredible" or contrary to "physical realities." Defense counsel challenged BJ's description of the assault, and she continued to maintain that defendant restrained her while at the same time engaging in sexual contact and sexual penetration with her. During a police interview, defendant denied having sexual intercourse with BJ, but he testified that he did engage in sexual intercourse with her, but that the intercourse was consensual. It was ultimately for the jury to determine whose testimony to believe, and we will not interfere with the jury's role in assessing witness credibility. *Harrison*, 283 Mich.App at 378. Moreover, a victim's testimony alone is sufficient to establish criminal sexual conduct, and such testimony need not be corroborated. MCL 750.520h; *People v. Phelps*, 288 Mich.App 123, 132; 791 NW2d 732 (2010). Accordingly, the evidence was sufficient to support defendant's convictions, and the trial court did not err by denying defendant's motion for a directed verdict of acquittal.

*People v. Ingram*, 2013 WL 3717793, at *1–2.

This merits adjudication neither contradicts nor unreasonably applies Supreme Court case law.

### Clearly established federal law

The "clearly established Federal law" at issue when a petitioner asserts the evidence was insufficient is *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  *See Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (*Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)).

On direct review the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318.  Due process requires that "each element of a crime be proved to the jury beyond a reasonable doubt." *Alleyne v. United States*, 133 S. Ct. 2151, 2156 (2013).  The *Jackson* inquiry, however, does not require a court to "ask itself whether *it* believes the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 318–19 (internal citation and footnote omitted) (emphasis in original).  The Supreme Court recently characterized the *Jackson* standard as requiring a defendant to show that the jury's verdict "was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.  Even at the first level of deference, the *Jackson* standard is so demanding that "[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly

insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc).

When a federal habeas petition challenges the sufficiency of the evidence to support a state-court conviction, AEDPA establishes a standard that is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). *Accord Nali v. Phillips*, 681 F.3d 837, 841 (6th Cir. 2012) (explaining that the *Jackson* standard "requires deference to the jury's verdict and to the state court's review of that verdict"). This twice-deferential standard "does not permit a habeas court to engage in a fine-grained factual parsing." *Coleman*, 132 S. Ct. at 2064.

Under AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently"—the factfinder at trial and the state court on appellate review—than a reviewing court on habeas review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Even if a federal court finds that no rational jury could have convicted the defendant, the habeas court must "still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

34

Finally, on habeas review, a federal court does not reweigh the evidence or reassess the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder ... to weigh the probative value of the evidence and resolve any conflicts in the testimony." *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

**Discussion**

This claim fails when it is viewed through the doubly deferential lens of *Jackson* and AEDPA. The Michigan Court of Appeals carefully reviewed the evidence and reasonably determined that the prosecution presented sufficient evidence of CSC III (sexual penetration achieved via force or coercion) and CSC IV (sexual contact achieved using force or coercion).

The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and "through the framework of 28 U.S.C. § 2254(d)." *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

Mich. Comp. Laws § 750.520d(1)(b) criminalizes sexual penetration achieved via "force or coercion." Likewise Mich. Comp.

35

Laws § 750.520e(1)(b) criminalizes sexual contact achieved via "force or coercion."

According to Michigan law "force or coercion" includes, but is not limited to, any of the following circumstances:

> (i) When the actor overcomes the victim through the actual application of physical force or physical violence.
>
> (ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.
>
> (iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.
>
> (iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.
>
> (v) When the actor, through concealment or by the element of surprise, is able to overcome the victim.  [Mich. Comp. Laws §§ 750.520d(1)(b); 520b(1)(f)(i) to (v).]

Under Michigan law "the prohibited force encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the

accomplishment of sexual penetration without regard to the victim's wishes." *People v. Carlson*, 466 Mich. 130, 140; 644 NW2d 704 (2002).

The victim testified that Ingram grabbed her hands and placed them behind her back. (11/30/2011 Trial Tr. at 40–41, 52.) Ingram then pushed her over a cabinet. (*Id*. at 40, 42.) Ingram squeezed the victim's breasts and touched her vaginal area over her clothes. (*Id*. at 41–42.) Ingram pulled the victim's pants down with force and inserted his penis into her vagina from behind. (*Id*. at 40, 42.) This testimony was entirely sufficient to show that Ingram used "force or coercion" to accomplish the penetration and sexual contacts.

Ingram's attack on the victim's credibility is simply a challenge to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." *United States v. Farley*, 2 F.3d 645, 652 (6th Cir. 1993). An assessment of the credibility of witnesses is, therefore, beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). *See also United States v. Bailey*, 444 U.S. 394,

414–15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.") (internal citations, quotation marks and alterations omitted).

Moreover, the evidence is not rendered insufficient because the victim's testimony was not corroborated. The testimony of a single, uncorroborated prosecuting witness is sufficient to support a conviction, so long as the prosecution presents evidence establishing the elements of the offense beyond a reasonable doubt. *Brown v. Davis*, 752 F.2d 1142, 1144–45 (6th Cir. 1985). The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's sexual assault conviction. *See United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (citing *Gilbert v. Parke*, 763 F.2d 821, 826 (6th Cir. 1985)). A rational jury could have concluded from the evidence taken in the light most favorable to the prosecution that Ingram used force or coercion to accomplish the penetration and the two incidents of sexual contact.

Under AEDPA, federal "judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). *See also Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007)

38

(affirming the denial of habeas relief despite the fact that, "on de novo review, [the court] might be hard-pressed to conclude . . . [that] any trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (citing *Jackson*, 443 U.S. at 319).

The state court of appeals decision is not an unreasonable application of *Jackson* or an unreasonable determination of the facts. It certainly was not so lacking in justification as to amount to an error beyond any possibility of fairminded disagreement. The state court rejection of this claim was not so unreasonable that all "fairminded jurists" would have concluded otherwise. *Harrington*, 562 U.S. at 101.

Consequently, habeas relief is not available for this claim.

## II.   Ingram's claim that his convictions were against the great weight of the evidence is not cognizable.

Ingram's second habeas claim is that his convictions were against the great weight of the evidence.

The Michigan Court of Appeals considered and denied this claim on the merits by applying the correct constitutional standard in a manner that was not objectively unreasonable:

> Defendant next argues that the trial court erred by denying his motion for a new trial because the jury's verdict was

against the great weight of the evidence. A verdict contravenes the great weight of the evidence if "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v. Lacalamita*, 286 Mich.App 467, 469; 780 NW2d 311 (2009). A new trial is generally permissible when the evidence does not reasonably support the verdict, and the verdict was "more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*.

Defendant contends that his own testimony prejudiced the jury and undermined the verdict. In particular, defendant argues that, during cross-examination, the prosecution elicited testimony regarding his womanizing behavior, which caused the jury to dislike him. The record shows that it was defendant, rather than the prosecution, who introduced the subject. During questioning regarding defendant's claim that he paid BJ for sexual intercourse, defendant testified that women usually paid him for sexual intercourse because he knows "how to treat a woman." Defendant cannot now claim error predicated on a matter that he himself raised at trial. "To hold otherwise would allow defendant to harbor error as an appellate parachute." *People v. Fetterley*, 229 Mich.App 511, 520; 583 NW2d 199 (1998). In any event, it is unlikely that defendant's brief account of his self-proclaimed sexual prowess caused the jury to convict him based on reasons other than the evidence concerning the sexual assault itself. In short, the evidence did not preponderate so heavily against the verdict that a miscarriage of justice would result if the verdict was allowed to stand. *Lacalamita*, 286 Mich.App at 469. The trial court therefore did not err by denying defendant's motion for a new trial.

*People v. Ingram*, 2013 WL 3717793, at *2.

This merits adjudication neither contradicts nor unreasonably

applies Supreme Court case law.

40

### Discussion

A habeas petitioner's claim that his conviction is against the great weight of the evidence is not cognizable on habeas review.  In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result."  *People v. Lemmon*, 456 Mich. 625, 642; 576 N.W.2d 129, 137 (1998).  This authority is conferred by statute and court rule. *Id.* at 634 (citing Mich. Comp. Laws § 770.1 and Mich. Ct. Rule 6.431(B)).  The Michigan Supreme Court has noted that the grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude."  576 N.W.2d at 133, n.8.

A claim that the verdict was against the great weight of the evidence is a state law claim not cognizable on federal habeas review. *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007) ("a manifest-weight-of-the-evidence argument is a state-law argument"); *see also Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).  In

short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the weight of the evidence." *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Consequently, habeas relief is not available for this claim.

## III. The state appellate court decision affirming the trial court's refusal to admit evidence of the victim's prior sexual activities on the basis of the Michigan rape-shield law did not deprive Ingram of a fair trial where the only issue at trial was whether the sex between Ingram and the victim was consensual.

Ingram's third habeas claim is the trial court erroneously denied his motion in limine to allow evidence of the victim's prior sexual history with third parties.

The Michigan Court of Appeals considered and denied this claim on the merits by applying the correct constitutional standard in a manner that was not objectively unreasonable:

> Finally, defendant argues that the trial court erroneously denied his motion in limine to allow evidence of BJ's prior sexual history with third parties. We review for an abuse of discretion a trial court's decision to admit evidence. *People v. Gursky*, 486 Mich. 596, 606; 786 NW2d 579 (2010). An abuse of discretion occurs when the court's decision "falls outside the range of principled outcomes." *People v. Feezel*, 486 Mich. 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted).

Generally, all relevant evidence is admissible at trial. MRE 402. "Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". MRE 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." MRE 403.

MCL 750.520j(1), commonly known as the rape-shield law, provides:

> Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted [in a criminal sexual conduct prosecution] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activating showing the source or origin of semen, pregnancy, or disease.

During trial defendant sought to admit: (1) testimony from a man who claimed to have had a sexual encounter with BJ, who then falsely accused him of impregnating her and began stalking him; (2) testimony from the man's supervisor that he had spoken with BJ about the stalking; and (3) testimony from a third man claiming that BJ "would hit on anyone" and had "tried to get with him." The third man's proposed testimony constituted reputation evidence that was inadmissible under MCL 750.520j(1). In addition, the

43

supervisor's proposed testimony was derivative of the man
who claimed to have had a casual sexual encounter with BJ,
evidence of which was also inadmissible under the rape-
shield statute. Further, the proffered evidence was not
relevant to whether BJ consented to the particular sexual
encounter at issue as defendant claimed. Therefore, the trial
court did not abuse its discretion by denying defendant's
motion in limine to introduce the evidence.

*People v. Ingram*, 2013 WL 3717793, at *3.

This merits adjudication neither contradicts nor unreasonably

applies Supreme Court case law.

### Clearly established federal law

The Sixth Amendment Confrontation Clause guarantees the

accused the right to cross-examine adverse witnesses to uncover

possible biases and expose the witness's motivation in testifying. *See*

*Davis v. Alaska*, 415 U.S. 308, 315–316 (1974). However, the

Confrontation Clause guarantees only an opportunity for effective cross-

examination, not cross-examination that is effective in whatever way,

and to whatever extent, that the defendant may wish. *United States v.*

*Owens*, 484 U.S. 554, 559 (1988) (internal citations omitted). A trial

court has the discretion to limit the scope of cross-examination.

*Delaware v. Van Arsdall*, 475 U.S. 673, 675 (1986).

The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiring into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, a witness's safety, or interrogation that is repetitive or only marginally relevant. *Van Arsdall*, 475 U.S. at 679. Moreover, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).

Further, a defendant's right to confrontation "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Michigan v. Lucas*, 500 U.S. 145, 149 (1991). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

45

**Discussion**

The state appellate court denial of relief regarding this claim was not contrary to or an unreasonable application of Supreme Court precedent.

*First*, the Supreme Court has opined that the rights of victims of rape are important enough to justify some limitations on a defendant's right to confront witnesses.  See Lucas at 149–50 ("The Michigan [rape-shield] statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.").

*Second*, the Supreme Court has held that a trial court may preclude a defendant from introducing evidence that is "only marginally relevant."  *Van Arsdall*, 475 U.S. at 679.  Moreover, an accused in a criminal case has no right to introduce evidence that "is inadmissible under the standard rules of evidence."  *Egelhoff*, 518 U.S. at 42.  The Court of Appeals reasonably concluded that the proffered evidence was not relevant to whether the victim consented to the particular sexual encounter at issue as Ingram claimed.

46

*Third*, the jury had enough information, despite the limits placed on the cross-examination, to fully assess Ingram's theory of the case that the sex was consensual. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) ( "Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.") (quotation omitted). *See also Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) ("Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence.").

The Michigan Court of Appeals ruling was reasonable in its application of and consistent with clearly established federal law.

Consequently, habeas relief is not available for this claim.

**IV.    A claim that one is actually innocent is not cognizable on habeas review and the state appellate court rejection of Ingram's *Napue* claim was not objectively unreasonable where Ingram has not shown perjury occurred much less prosecutor knowledge of perjury.**

Ingram's fourth habeas claim is that because the sex was consensual he is actually innocent causing a miscarriage of justice; that

47

the prosecution failed to establish the requisite specific acts and criminal intent, and that some testimony was a product of perjury and resulting in a *Napue* violation that denied him a fair trial.

Ingram first raised this claim in his motion for relief from judgment. The trial court denied relief stating:

> With his first claim of error, Defendant appears to contend that there was insufficient evidence to convict him of the offenses and, in a seemingly contradictory vein, that the testimonial evidence which supports his convictions should be regarded as perjured.
>
> Insofar as Defendant makes any argument that the evidence at trial was insufficient to support his convictions, or that his version of the events is more plausible, the Court of Appeals has already rejected such argument. As they explained:
>
>> Nothing about BJ's description of the attack can be characterized as "patently incredible" or contrary to "physical realities." Defense counsel challenged BJ's description of the assault, and she continued to maintain that defendant restrained her while at the same time engaging in sexual contact and sexual penetration with her. During a police interview, defendant denied having sexual intercourse with BJ, but he testified that he did engage in sexual intercourse with her, but that the intercourse was consensual. It was ultimately for the jury to determine whose testimony to believe, and we will not interfere with the jury's role in assessing witness credibility. *Harrison*, 283 Mich.App at 378. Moreover, a victim's testimony alone is sufficient to establish criminal sexual conduct,

48

and such testimony need not be corroborated. MCL 750.520h; *People v. Phelps*, 288 Mich.App 123, 132; 791 NW2d 732 (2010). Accordingly, the evidence was sufficient to support defendant's convictions, and the trial court did not err by denying defendant's motion for a directed verdict of acquittal.

*People v. Ingram*, Docket No. 309035, 2013 WL 3717793, at *2 (Mich. Ct. App. July 16, 2013), lv. den 495 Mich. 915 (2013) (underlined emphasis added).

Pursuant to MCR 6.508(D)(2), this Court may not grant a motion for relief from judgment on grounds that were decided against Defendant on appeal. Therefore, no relief is warranted on the ground that there was insufficient evidence to support the convictions.

Alternatively, Defendant claims that this issue should be regarded as only partially raised on appeal because it was not previously raised as a *Napue* violation involving alleged perjury.[1] [Referring to *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).] However, Defendant's attempt to recast his attack on the victim's testimony as one of alleged perjury, rather than insufficient evidence, is unpersuasive. Already implicit in the appellate arguments attacking the credibility of the victim's testimony was the notion that the victim's testimony in court was untruthful.

The gist of Defendant's arguments in the present motion is that the victim's testimony should be deemed perjured simply because he thinks it should have been disbelieved. To that end, his "perjury" arguments appear to consist of such matters as arguing alleged discrepancies in the number of bruises she testified to at trial as opposed to documented in the medical records at a particular point in time, that another witness testified as to not hearing her screams as she testified, that the (latest) version of events he gave at

trial as to what he claimed happened should have been found "more plausible", and that the victim's version lacked "scientific support." Such argument fails to make any showing of perjury at his trial, but merely rehashes rejected arguments that go to the credibility and weight of the evidence. It was for the jury to resolve such credibility and weight issues in determining whether there was sufficient evidence to convict Defendant of the charged offenses. They did so in returning unanimous guilty verdicts against the Defendant. It is not for this Court to subvert the role of the jury by setting aside their considered credibility determinations. Entitlement to relief from judgment has not been shown.

*People v. Ingram*, No. 08-031317-FH, at *3–4, Saginaw County Cir. Ct. Order (Dec. 1, 2015).

This merits adjudication neither contradicts nor unreasonably applies Supreme Court case law.

**Clearly established federal law**

The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976)

50

(footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343. A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270.

**Discussion**

*First*, a claim of actual innocence without a clear separate constitutional violation is not cognizable under 28 U.S.C. § 2254. *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007) (collecting cases). *See also Muntaser v. Bradshaw*, 429 F. App'x 515, 521 (6th Cir. 2011) ("[A]n actual innocence claim operates only to excuse a procedural default so that a petitioner may bring an independent constitutional challenge, ... Given that [petitioner] alleges only a freestanding claim to relief on the grounds of actual innocence, his claim is not cognizable ... and, accordingly, does not serve as a ground for habeas relief."). The

Supreme Court has recently reaffirmed that it has never recognized a freestanding claim of actual innocence as a ground for habeas corpus relief, except possibly in death-penalty cases. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").

*Second*, the state court rejection of Ingram's *Napue* claim was not objectively unreasonable. "A claim under *Napue* will succeed when (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *Jackson v. Brown*, 513 F.3d 1057, 1071-72 (9th Cir. 2008) (internal quotation marks omitted). The Supreme Court has "not clearly established that a police officer's knowledge of false testimony may be attributed to the prosecution under *Napue*." *Id*. Ingram's *Napue* claim fails because he has not shown that perjury occurred, much less that the prosecutor knew perjury was occurring.

Consequently, habeas relief is not available for this claim.

**V.    The state appellate court rejection of Ingram's claim that convicting him of CSC III and CSC IV violated double jeopardy rights was not objectively unreasonable where each crime contains an element the other does not.**

Ingram's fifth habeas claim is he was subjected to double jeopardy in violation of the Fifth Amendment of the United States Constitution, where he was subjected to multiple prosecutions for the same offense.

Ingram first raised this claim in his motion for relief from judgment.  The trial court denied relief stating:

> Defendant next argues that his convictions for CSC 3rd and CSC 4th violate the U.S. Constitution's Fifth Amendment protection against double jeopardy. Defendant is mistaken that any double jeopardy issue exists. As explained by our Court of Appeals:
>
>> To determine whether a defendant has been subjected to multiple punishments for the "same offense," we must first look to determine whether the Legislature expressed a clear intention that multiple punishments be imposed. *People v. Smith*, 478 Mich. 292, 316, 733 N.W.2d 351 (2007). Where the Legislature clearly intends to impose such multiple punishments, there is no double jeopardy violation. *Id* Where the Legislature has not clearly expressed an intention to impose multiple punishments, the elements of the offenses must be compared using the *Blockburger* test. *Id* at 316-318, 733 N.W.2d 351.
>>
>> Under the *Blockburger* test, if each offense "requires proof of a fact which the other does not" then there is no violation of double jeopardy. *Id* at

311, 52 S.Ct 180 (quotation marks and citations omitted). However, because the *Blockburger* test is simply a tool used to ascertain legislative intent, the focus must be on a comparison of the abstract legal elements of the offenses and not on the particular facts of the case. *People v. Ream*, 481 Mich. 223, 238, 750 N.W.2d 536 (2008). *People v. Garland*, 286 Mich. App. 1, 4-5, 777 N.W.2d 732, 734-35 (2009) (footnote omitted).

As the Legislature did not clearly express its intention to impose multiple punishments in the CSC chapter, MCL 750.520 et seq., the Court applies the *Blockburger* test.[2] [The "*Blockburger* test" refers to the test derived from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).] *Id* at 5. Defendant fails to show the elements of the crime of CSC 3rd and the crime of CSC 4th involve the same factual elements. Indeed, the elements of the crimes are separate and distinct from one another. In enacting the CSC 3rd statute, our Legislature criminalized the act of "sexual penetration with another person" under certain circumstances. MCL 750.520d(l). On the other hand, CSC 4th criminalizes an act of "sexual contact with another person" under certain circumstances. MCL 750.520e(l).

The terms "sexual penetration" and "sexual contact", in turn, are expressly defined by the CSC chapter and describe different conduct. See MCR 750.520a(q) & (r). Thus a CSC 3rd conviction requires proof of the fact an act of "sexual penetration" took place while a CSC 3rd (sic) conviction requires different proof of an act of "sexual contact." Because each offense requires proof of a fact that other does not, no double jeopardy issue exists. In this case, the evidence shows Defendant was convicted of three CSC offenses arising out of three separate criminal acts: his sexual penetration of the victim, his sexual contact of the victim's breasts, and his sexual contact of her vagina. Defendant was not convicted of the "same offense" twice, as each act for

which he was convicted constitutes a separate offense. No
relief from judgment is warranted.

*People v. Ingram*, No. 08-031317-FH, at *4–6, Saginaw County Cir. Ct.
Order (Dec. 1, 2015).

This merits adjudication neither contradicts nor unreasonably

applies Supreme Court case law.

### Clearly established federal law

The Double Jeopardy Clause of the Fifth Amendment states that

no person shall "be subject for the same offense to be twice put in

jeopardy of life or limb."  The Fourteenth Amendment's Due Process

Clause extends the protections of the Double Jeopardy Clause to state

prosecution.  *See Benton v. Maryland*, 395 U.S. 784, 794 (1969).  One of

the basic protections afforded by the Double Jeopardy Clause is

protection against multiple punishments for the same offense.  *Brown v.*

*Ohio*, 432 U.S. 161, 165 (1977).

The protection against multiple punishments prohibits the

government from "punishing twice or attempting a second time to

punish criminally for the same offense."  *Witte v. United States*, 515

U.S. 389, 396 (1995) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399

(1938)).  Although the Double Jeopardy Clause protects a defendant

against cumulative punishments for convictions on the same offense,

the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution.  *See Ohio v. Johnson*, 467 U.S. 493, 500 (1984).  Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is essentially a question of legislative intent.  *Id*. at 499.

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  *Brown v. Ohio*, 432 U.S. 161, 166 (1977).  As the Supreme Court explained that test in *Brown*:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...." This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*Id*. at 166 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).

**Discussion**

Under the dual layers of deference required by the Supreme Court's double jeopardy precedents and 28 U.S.C. § 2254(d), the state appellate court rejection of Ingram's double jeopardy claim was not objectively unreasonable.  See *Renico v. Lett*, 559 U.S. 766, 777 (2010) (finding, in the context of a double jeopardy issue, that "dual layers of deference" result when AEDPA combines with substantive law that is itself deferential).

In contrast to most habeas claims, which are based entirely on federal constitutional rights, a claim under the Double Jeopardy Clause requires an analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government.  *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013).

Here the state court reasonably determined after application of the *Blockburger* test that Ingram's double jeopardy rights were not violated when he was convicted of one CSC III and two counts of CSC IV where each crime contains an element the other does not.  If the *Blockburger* test is satisfied it is presumed that the legislature intended

57

to punish the defendant under both statutes and there is no double jeopardy bar to multiple punishments.  *Whalen v. United States*, 445 U.S. 684, 691–92 (1980).

Moreover, there were three separate crimes that were committed. Ingram committed CSC IV when he used force or coercion to grope the victim's breasts and he committed second count of CSC IV when he used force or coercion to touch the victim's vaginal area over her clothes, and then Ingram committed a third crime, CSC III, when he used force or coercion to put his penis in the victim's vagina.  Under such circumstances, Ingram's double jeopardy rights were not violated. *Johnson*, 467 U.S. at 500.

Consequently, habeas relief is not available for this claim.


**VI.-VIII.   Under the highly deferential standards of *Strickland v. Washington* and 28 U.S.C. § 2254(d), the state court rejection of Ingram's claim that counsel was ineffective was not objectively unreasonable.**

Ingram's sixth, seventh and eighth habeas claims are that trial counsel was ineffective when (1) counsel failed to object when the court gave a jury instruction that permitted the jury to find him guilty even if they were not in unanimous agreement on each charge; (2) counsel

58

failed to impeach the victim's trial testimony with inconsistencies in her

preliminary examination testimony, and failed to point out the

discrepancies in closing argument; and (3) counsel failed to do a proper

investigation and present facts contained in documents that negated

the victim's version of events.

Ingram first raised this claim in his motion for relief from

judgment.  The trial court denied relief stating:

> [R]elief [from judgment] may not be granted where the
> motion:
>
> (3) alleges grounds for relief, other than jurisdictional
> defects, which could have been raised on appeal from the
> conviction and sentence or in a prior motion under this
> subchapter, unless the defendant demonstrates (a) good
> cause for failure to raise such grounds on appeal or in the
> prior motion, and (b) actual prejudice from the alleged
> irregularities that support the claim for relief ...
>
> MCR 6.508(D)(3).
>
> ***
>
> In considering claims of ineffective assistance of counsel,
> effective assistance of counsel is presumed and the
> defendant bears the heavy burden of proving otherwise.
> *People v. Mack*, 265 Mich.App 122, 129; 695 NW2d 342
> (2005). To prevail, a Defendant must establish: (1) his
> counsel's performance was deficient under an objective
> standard of reasonableness and (2) the deficiency was
> prejudicial to defendant to the extent that, but for counsel's
> error, the result of the proceedings would have been
> different. *Id*.

\*\*\*

Trial counsel did vigorously challenge the credibility of the victim's testimony by arguing alleged inconsistencies and discrepancies during closing argument. See TT.III 93-98.[3]. ["TT.III" refers to Trial Transcript, Vol. III.]

\*\*\*

Actual prejudice warranting relief from judgment has not been shown.

*People v. Ingram*, No. 08-031317-FH, at \*2, 7, 8, Saginaw County Cir. Ct. Order (Dec. 1, 2015).

The resolution of this claim was not an unreasonable application of the "clearly established" principles of *Strickland* "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

**Procedural default**

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012).

A habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state

courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

Claims VI, VII and VIII are procedurally defaulted because after citing Mich. Ct. Rule 6.508(D)(3)'s "actual prejudice" language the trial court denied relief because Ingram could not show "actual prejudice." *People v. Ingram*, No. 08-031317-FH, at *2, 7, 8, Saginaw County Cir. Ct. Order (Dec. 1, 2015).

This claim is procedurally defaulted because the trial court rejected it on the basis of Mich. Ct. Rule 6.508(D)(3). *See Ivory v. Jackson*, 509 F.3d 284, 292–93 (6th Cir. 2007); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). *Accord Amos v. Renico*, 683 F.3d 720, 727 (6th Cir. 2012) (holding that a Michigan court's denial of a motion for relief from judgment under Rule 6.508(D)(3) is both an independent and adequate state ground sufficient for procedural default).

Further, a state court does not fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See*

61

*McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  In fact, the alternative merits analysis is entitled to AEDPA deference.  *See Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009).

"Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default."  *Dretke v. Haley*, 541 U.S. 386, 388 (2004).  *See also Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

Under limited circumstances (which do not exist here), appellate counsel's ineffectiveness can serve as cause to excuse the state-court procedural default of other constitutional claims.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 321–22 (6th Cir. 2012).  But it does not do so here because claims VI, VII and VIII do not merit habeas relief.  *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (Because none of the underlying claims is meritorious, ineffective assistance of counsel does not excuse the procedural default.).

Alternatively, Ingram may avoid procedural default if he can demonstrate that a fundamental miscarriage of justice will occur as a

62

result of the Court's failure to consider the substantive merits of these claims. *Coleman*, 501 U.S. at 750. The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke*, 541 U.S. at 388; *Carrier*, 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To show that this case is the "extraordinary" one warranting application of this exception, the petitioner must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. Ingram has not presented any new reliable evidence suggesting he is actually innocent.

Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of these claims.

But even if the procedural default is excused or overlooked, this claim does not warrant habeas relief.

**Clearly established federal law**

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), is clearly established federal law for purposes of ineffective-assistance-of-counsel claims. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). As stated in *Maryland v. Kulbicki*, 136 S. Ct. 2 (2015), "Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel,' and prejudicial, meaning his errors deprive the defendant of a fair trial." (quoting *Strickland*).

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). Recognizing that state courts are no less experienced than federal courts in dealing with

64

claims of ineffective assistance of counsel, *Burt v. Titlow*, 134 S. Ct. 10, 14 (2013), federal law erects a high deferential standard—indeed, a "doubly deferential standard"—for claims that a state court erred.

On habeas review of a state-court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. On habeas review, the question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Mirzayance*, 556 U.S. at 123 (quoting *Schriro*, 550 U.S. at 473) (internal quotation marks omitted). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id*. "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.*" Mirzayance*, 556 U.S. at 123. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The

question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. *See also Storey v. Vasbinder*, 657 F.3d 372, 374 (6th Cir. 2011) ("[T]he Supreme Court has gone out of its way to make clear that, in order to obtain a new trial on ineffective-assistance grounds, the petitioner must do more than show that he had a bad lawyer—even a really bad one. Instead, the petitioner must also show prejudice, which means he must show a reasonable likelihood that his lawyer's bad performance made a difference in the outcome of his trial. The Court's precedents make clear that the former showing by no means leads inevitably to the latter.").

Further, the reviewing court is required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Cullen v. Pinholster*, 563 U.S. at 196 (the habeas court must "affirmatively entertain the range of possible reasons [ ] counsel may have had for proceeding as [he] did") (internal quotation marks omitted).

## Discussion

This claim fails when it is viewed through the doubly deferential lens of *Strickland* and AEDPA. In other words, giving proper deference to counsel's judgment and the state court decision, Ingram has not shown that the state court's decision was objectively unreasonable.

Ingram has not shown within a reasonable probability that if counsel had objected to the jury instructions, or engaged in better cross-examination of the victim or given a better closing argument or engaged in additional investigation that the jury would have had a reasonable doubt respecting his guilt.

An attorney's failure to object to jury instructions is deficient only if the petitioner can establish that the instructions were inaccurate and that, therefore, an objection would have been sustained. *Daniels v Lafler*, 501 F.3d 735, 743 (6th Cir. 2007).

Most cross-examinations can be improved but if that "were the standard of constitutional effectiveness, few would be the counsel whose performance [pass] muster." *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996). Contrary to Ingram's claim, his attorney did impeach the victim with prior inconsistent preliminary examination testimony.

(11/30/2100 Trial Tr. at 63–65.)  Nor has Ingram established

prejudice—i.e. a "reasonable probability that more vigorous

examination" would have changed the result of the trial.  *Tevlin v.*

*Spencer*, 621 F.3d 59, 69 (1st Cir. 2010).

"Judicial review of a defense attorney's summation is . . . highly

deferential - and doubly deferential when it is conducted through the

lens of federal habeas."  *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).  As

noted by the trial court, Ingram's attorney did vigorously challenge the

credibility of the victim's testimony by arguing alleged inconsistencies

and discrepancies during closing argument.  See (12/1/2011 Trial Tr. at

93–98.)  *See also Robinson v. United States*, 625 F. App'x 721, 726 (6th

Cir. Sept. 1, 2015) ("given the evidence that the government presented,

even a better summation probably would not have persuaded the jury to

acquit. Robinson therefore cannot show prejudice.")

Consequently, habeas relief is not available for this claim.

## IX.   Challenges to the scoring of state sentencing guidelines are not cognizable on habeas review.

Ingram's ninth habeas claim is that offense variable 13 and prior

record variable 7 were misscored.

Ingram first raised this claim in his motion for relief from judgment. The trial court denied relief stating:

> Defendant further contends that prior record variable 7 ("PRV 7") and offense variable 13 ("OV 13") were improperly scored in calculating his sentencing guidelines. Defendant's argument for a rescoring of these variables is conditioned on whether his double jeopardy argument is successful. As Defendant's double jeopardy argument lacks merit, there is no basis for treating his three convictions as only one for purposes of rescoring these guidelines variables. Relief from judgment is not warranted.

*People v. Ingram,* No. 08-031317-FH, at *6, Saginaw County Cir. Ct. Order (Dec. 1, 2015).

This merits adjudication neither contradicts nor unreasonably applies Supreme Court case law.

**Discussion**

Relief should be denied because the claim is not cognizable. Claims concerning the improper scoring of sentencing guidelines are state-law claims and are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature).

The Sixth Circuit has held on numerous occasions that alleged errors in the scoring of Michigan's sentencing guidelines are not

cognizable on habeas review. *Cheatham v. Hosey*, No. 93–1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) ("Petitioner fails to articulate the grounds upon which the trial court's departure from the Michigan Sentencing guidelines violates any federal due process right he possesses."); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only."); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) ("Tironi's challenges to the trial court's application of Michigan's sentencing guidelines also raise issues of state law not cognizable on habeas review."); *Coleman v. Curtin*, 425 F. App'x 483, 484–85 (6th Cir., 2011) ("To the extent that Coleman asserts his sentence was improperly calculated under state law, his claim is not cognizable in federal habeas proceedings."); *Kissner v. Palmer*, 826 F.3d 898, 901 (6th Cir. 2016) (finding a certificate of appealability is not available for a claim that state sentencing guidelines were misscored).

Consequently, habeas relief is not available for this claim.

70

**X.    Under the highly deferential standards of *Strickland v. Washington* and 28 U.S.C. § 2254(d), the state court rejection of Ingram's claim that appellate counsel was ineffective was not objectively unreasonable because none of the omitted issues was reasonably likely to lead to a different result if raised on direct appeal.**

Ingram's tenth and final habeas claim is that appellate counsel

was ineffective for not raising habeas claims IV-IX in his direct appeal.

Ingram first raised this claim in his motion for relief from

judgment.  The trial court denied relief stating:

> Finally, Defendant contends that his trial and appellate attorneys were ineffective in failing to raise the grounds asserted in the presented motion. "The test for ineffective assistance of appellate counsel is the same as that for trial counsel." *People v. Pratt*, 254 Mich.App. 425, 430 (2002). In considering claims of ineffective assistance of counsel, effective assistance of counsel is presumed and the defendant bears the heavy burden of proving otherwise. *People v. Mack*, 265 Mich.App 122, 129; 695 NW2d 342 (2005). To prevail, a Defendant must establish: (1) his counsel's performance was deficient under an objective standard of reasonableness and (2) the deficiency was prejudicial to defendant to the extent that, but for counsel's error, the result of the proceedings would have been different. *Id*. Appellate counsel is not ineffective for winnowing out weak arguments or failing to advocate a meritless position. *Pratt*, 265 Mich.App. at 130 (2005).
>
> Here, none of the grounds raised in the present have any legal merit and neither trial nor appellate counsel is ineffective for failing to raise these grounds devoid of legal merit. Trial counsel did vigorously challenge the credibility of the victim's testimony by arguing alleged inconsistencies and discrepancies during closing argument. See TT.III 93-

98.[3] ["TT.III" refers to Trial Transcript, Vol. III.] Additionally, because Defendant has failed to establish any meritorious claim of error not raised by his appellate attorney, he has not shown that appellate counsel failed to raise an error that would have resulted in a reasonably likely chance of acquittal. Actual prejudice warranting relief from judgment has not been shown.

*People v. Ingram*, No. 08-031317-FH, at *7–8, Saginaw County Cir. Ct. Order (Dec. 1, 2015).

This merits adjudication neither contradicts nor unreasonably applies Supreme Court case law.

**Clearly established federal law**

A defendant's right to counsel on appeal derives not from the Sixth Amendment, but from the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *See Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 160–61 (2000) (explaining that the right to appellate counsel is based on the Fourteenth Amendment and that "the Sixth Amendment does not apply to appellate proceedings").

The clearly established Federal law in play when a petitioner asserts that his appellate counsel was ineffective is *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), which applied the *Strickland* framework to an appellate counsel claim when the challenge is aimed at the selection of

72

issues presented on appeal.  *See also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding a petitioner who argued his appellate counsel rendered ineffective assistance must satisfy both prongs of *Strickland*).

Appellate counsel is not required to raise every conceivable issue; as the Supreme Court has observed, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).  *See also Pierce v. Visteon Corp.*, 791 F.3d 782, 788 (7th Cir. 2015) ("To brief more than three or four issues not only diverts the judges' attention but also means that none of the issues will be addressed in the necessary depth."); *Jones v Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (It is not deficient performance to leave out some colorable issues, "indeed, it may even be the *best* type of performance.") (emphasis in original).

When a habeas petitioner alleges that his appellate attorney was ineffective a habeas court defers twice – once to appellate counsel's decision not to raise the issue and again to the State court's decision finding no ineffectiveness.  *Etherton v. Woods*, 136 S. Ct. 1149, 1153

(2016) (per curiam) ("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").  In the context of claims premised on counsel's failure to raise certain issues on direct appeal, the question is whether the state courts had any "reasonable basis" for concluding the petitioner would not have prevailed if his appellate counsel had raised these issues on direct appeal.  *Goff v. Bagley*, 601 F.3d 445, 462 (6th Cir. 2010).

Finally, when ineffective assistance of appellate counsel is shown, the prevailing habeas petitioner is entitled to a new direct appeal, not a new trial.  *See Evitts v. Lucey*, 469 U.S. 387, 403 (1985) (defendant entitled to new appeal when counsel's deficient failure to comply with local court rules led to dismissal of first appeal); *Mapes v. Tate*, 388 F.3d 187, 194–95 (6th Cir. 2004); *Hardaway v. Robinson*, 655 F.3d 445, 451 (6th Cir. 2011).  "Such a narrow remedy neutralizes the constitutional violation."  *See Mapes*, 388 F.3d at 195.

### Discussion

The decision of the state court rejecting this claim withstands scrutiny under the requisite "doubly deferential" standard applicable

where both appellate counsel and the state habeas court are afforded the benefit of the doubt.  *Woods*, 136 S. Ct. at 1153.

None of the claims Ingram argues his appellate attorney should have raised on direct appeal have been shown to have such obvious merit that counsel was ineffective in failing to raise them.  Reasonable strategic choices by appellate counsel as to which issues to raise, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a constitutional violation.  *Barnes*, 463 U.S. at 750–54.  Given the emphasis in appellate practice on not raising too many different issues and thus not diluting or burying a defendant's strongest points, the state court rejection of this claim was not unreasonable application of the *Strickland* standard.

As it was, appellate counsel presented three legitimate issues on direct appeal.  Indeed, Ingram is still presenting those same claims in his amended petition, asserting that they entitle him to habeas relief. "[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."  *Harrington*, 562 U.S. at 111.  Appellate counsel's ultimate goal in selecting issues is to "maximize the likelihood of success."  *Smith*, 528 U.S. at 288.  Appellate

75

counsel's selection of the issues did not so clearly fall outside the wide range of professionally competent assistance that the state court was required to find deficient performance.

Appellate counsel did not commit an error of constitutional magnitude. In other words, the omitted issues were not so plainly meritorious that it would have been objectively unreasonable for appellate counsel to winnow them out from the issues appellate counsel chose to present in the exercise of his professional judgment. *See Cargle v. Mullin,* 317 F.3d 1196, 1202 (10th Cir. 2003) (the petitioner failed to demonstrate that any "omitted issue [was] so plainly meritorious that it would have been unreasonable to winnow it out"). *See also Smith v. Murray*, 477 U.S. 527, 535 (1986) (concluding that counsel's decision not to press a claim on appeal was not "an error of such magnitude that it rendered counsel's performance constitutionally deficient under the test of *Strickland v. Washington*"). Habeas relief of a new appeal is not available because a reasonable probability that the unraised issues would have succeeded on direct appeal has not been shown. *See Robbins*, 528 U.S. at 285–86.

Finally, even if the state court did not reach the correct result under *Strickland*, it at least reached a reasonable one, which is sufficient under § 2254(d) to require denial of relief on this basis.

Consequently, this ineffective assistance of appellate counsel claim does not warrant granting Ingram a new direct appeal.

## CONCLUSION

Ingram's convictions were not the result of an "extreme malfunction" in the state criminal justice system. *Harrington*, 562 U.S. at 102. Rather, they are the result of the direct and circumstantial evidence of his guilt.

The state courts' rejection of Ingram's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree or agree on the correctness of the state court's decision.

Ingram was "entitled to a fair trial but not a perfect one, for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231–32 (1973); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial."); *Puckett v. United States*, 556 U.S. 129, 134 (2009) ("anyone familiar with the work of courts

understands that errors are a constant in the trial process, that most do not much matter").

Additionally, the State asserts that Ingram is not entitled to habeas relief because he has not established that the alleged errors had a "substantial and injurious effect or influence" on the verdict in this matter. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993). The State recognizes that a *Brecht* harmless error analysis is not necessary for claims of ineffective assistance of counsel. *See Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995). This is because the "prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).

To warrant habeas relief, a questionable evidentiary admission must not only be erroneous, but it must also be so infirm that it rendered the trial fundamentally unfair, such that it had influence in determining the jury's verdict. *See Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998); *see also McCarley v. Kelly*, 801 F.3d 652, 665 (6th Cir. 2015).

The State also contends that Ingram has not demonstrated entitlement to discovery. "A habeas petitioner, unlike the usual civil litigant, is not entitled to discovery as a matter of ordinary course."

*Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Instead, a habeas petitioner is entitled to discovery only if the district judge "in the exercise of his discretion and for good cause shown grants leave" to conduct discovery.  Rule 6 Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.  To establish "good cause" for discovery, a habeas petitioner must establish that the requested discovery will develop facts which will enable him or her to demonstrate that he or she is entitled to habeas relief.  *See Bracy*, 520 U.S. at 908–09.  Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause."  R. Governing § 2254 Cases in the U.S. Dist. Cts. 6(a).  "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' " *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy*, 520 U.S. at 908–09).  "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.' " *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997));

Habeas Rule 6(a).  "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact."  *Williams*, 380 F.3d at 974 (internal quotation marks and citation omitted).  Ingram has not met this burden.

If this Court denies the petition, the State asserts that Ingram is also not entitled to a certificate of appealability (COA) so as to proceed further.  In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citations omitted).

81

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483–84. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. 529 U.S. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Slack,* 529 U.S. at 484.

## RELIEF

For the reasons stated above, the extraordinary remedy of habeas corpus is not warranted.  The Court should also deny Ingram any requested discovery, evidentiary hearing, bond, oral argument, and any other relief he seeks in this action, including a certificate of appealability.

<div style="margin-left: 50%;">

Respectfully submitted,

Bill Schuette
Attorney General

<u>s/Bruce H. Edwards</u>

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
Edwardsb8@michigan.gov
(P34983)

</div>

Dated: March 24, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2017, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> HONORABLE DAVID M. LAWSON
> MAGISTRATE JUDGE DAVID R. GRAND

and I hereby certify that Kathy Land has mailed by United States Postal Service the papers to the following non-ECF participant:

> Charles Ingram, #825646
> Cooper Street Correctional Facility
> 3100 Cooper St.
> Jackson, MI 49201

Respectfully submitted,

Bill Schuette
Attorney General

<u>s/Bruce H. Edwards</u>

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
Edwardsb8@michigan.gov
(P34983)