56

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES DEXTER INGRAM,

      Petitioner,

  -vs-

JOE BARRETT,

      Respondent.

Case No. 2:15-11074

Honorable DAVID M. LAWSON

Assistant Attorney General
Bruce H. Edwards,
Criminal Appellate Division
P.O. BOX 30217,
Lansing, Michigan 48909

Petitioner, In Pro se
CHARLES DEXTER INGRAM #825646
Cooper Correctional Facility
3100 Cooper Street
Jackson, Michigan
49201

## PETITIONERS RESPONSE TO RESPONDENTS ANSWER IN OPPOSITION TO AMENDED PETITION FOR WRIT OF HABEAS CORPUS



FILED
APR 2 4 2017
CLERK'S OFFICE
U.S. DISTRICT COURT

POOR QUALITY ORIGINAL

## TABLE OF CONTENTS

Introduction

Statements in Compliance with Habeas Rule 5(b)

    **A.** Statute of Limitations

        **1.** Argument

    **B.** Exhaustion

    **C.** Procedural Default

    **D.** Non-retroactivity Doctrine

Statement of the Case

    **A.** Trial Facts

    **B.** Procedural History

Standard of Review Pursuant to AEDPA

Argument(s)

**I.** Under the highly deferential standard of **Jackson v. Virginia** and 26 U.S.C. § 2254(d), the state appellate court rejection of Petitioner's claim that the evidence in support of his convictions was insufficient and **was** objectively unreasonable.

**II.** Petitioner's claim that his convictions were against the great weight of the evidence **is** a cognizable claim under the circumstances.

**III.** The state appellate court decision affirming the trial court's refusal to admit evidence of the victim's prior sexual activities on the basis of the Michigan rape-shield law **did** in fact deprive Petitioner of a fair trial where the only issue at trial was whether the sex between Petitioner and the victim was consensual.

IV.

A claim that one is actually innocent **is** a cognizable on habeas review and the state appellate court's rejection of Petitioner's **Napue** claim **was** objectively unreasonable where Petitioner **has** in fact shown perjury occurred **not** excluding the fact that the prosecutor had prior knowledge of the perjury.

V.

The state appellate court rejection of Petitioner's claim that convicting him of CSC III and CSC IV violated double jeopardy rights **was** objectively unreasonable where each crime contains an element the other does not.

VI–VIII.

Under the highly deferential standard of **Strickland v. Washington** and 28 U.S.C. § 2254(d), the state court rejection of Petitioner's claim that counsel was ineffective **is** objectively unreasonable.

IX.

Challenges to the scoring of state sentencing guidelines **are** cognizable on habeas review.

X.

Under the highly deferential standard of **Strickland v. Washington** and 28 U.S.C. § 2254(d), the state court rejection of Petitioner's claim that appellate counsel was ineffective **was** objectively unreasonable because none of the omitted issues was reasonably likely to lead to a different result if raised on direct appeal.

Conclusion.

Relief.

Certificate of Service.

## INTRODUCTION

On July 10, 2008, Petitioner Charles Ingram, who was in his late 40s, was accused of restraining 17-year-old BJ and groped her breasts, and touching her vaginal area over her close and then pulling her pants down and penetrating her vagina with his penis.

After a 4-day jury trial in Saginaw County, Michigan circuit court, the petitioner was convicted of two counts of fourth-degree criminal sexual conduct, Mich. Comp. Law § 750.520e(1)(a); and one count of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(b).

On January 30, 2012, petitioner was sentenced to prison terms totaling 7 to 15 years. The State of Michigan now holds Petitioner in custody in The Michigan Depart of Corrections. Petitioner commenced an action under 28 U.S.C. § 2254 by filing a petition with this Court in March of 2015. After a "stay and abey," Petitioner has by court order returned to this court and filed an amended petition on February 3, 2017, which raises seven additional claims totaling a total of the following 10 claims:[1]

I.  There was insufficient evidence to justify a reasonable juror concluding that all elements of the crime of criminal sexual conduct in the third degree and fourth degree was established beyond a reasonable doubt and all the state courts demstrated an unreasonable application of precedential federal law set forth in **Jackson v. Virinia.**

II. Petitioner's verdict was against the great weight of the evidence and the state court demonstrated an unreasonable determination of the facts of the case.

III.    Petitioner's rights to a fair trial were infringed upon by the improper denial of the motion in limine relative to the introduction of evidence of the victim's prior sexual history with third parties and in particular her prior claims of pregnancy.

IV.    Petitioner's conviction is a product of one being incarcerated whom is actually innocent [as] the acts that occurred Petitioner holds were consensual and that Petitioner did not have the malice intent or the mens res of the act that he was convicted of. The prosecution failed to established these specific acts of intent causing a miscarriage of justice also some testimony was a product of perjury and resulting in a Napuue violation and one was convicted by the violation and denied a fair trial.

V.    Defendant's conviction should be vacated and he should be granted a new trial because he was subjected to double jeopardy in violation of the Fifth Amendment of the United States Constitution, where he was subjected to multiple prosecutions for the same offense.

VI.    Defendant did not receive the effective assistance of trial counsel when counsel failed to object when the court gave a jury instruction that permitted the jury to find him guilty even if they were not in unanimous agreement on each charge.

VII.   Defendant did not receive the effective assistance of trial counsel when counsel failed to impeach [the] complainant with her preliminary examination testimony, when she testified at his trial, and when counsel failed to point out the discrepancies between complainant's preliminary examination testimony and her trial testimony, when it came out at trial at her closing argument.

VIII.  Defendant did not receive the effective assistance of trial counsel when counsel failed to do a proper investigation and present facts contained in documents that negated [the] complainant's version of events, and therefore, she should not have been believed.

IX.    The trial court improperly scored the offense variable 13 and prior record variable 7 making the guidelines incorrect in violation of Defendant's Sixth and Fourteenth Amendment rights.

X.     Defendant did not receive the effective assistance of appellate counsel when counsel did not raise the issues he now raises.

The Petitioner Now makes his response to Respondent's Answer to Petitioner's Amended Petition and requests that it be considered as part of petitioner's original Habeas Corpus as

— 2 —

ORDERED following exhaustion of state remedies, ORDERING the Clerk to reopen this case for statistical purposes, and adjudication of the issues therin.

### COUNTER STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the alleged procedural bars that preclude habeas review, the Attorney General, attorney for the respondent, asserts the following as if in conformity with Habeas Rule 5(b); and Stated the following.

### A. Statute of Limitations

### 1. Argument

The State asserts that any consideration of claims IV, V, IX, and X are barred because they were raised for the first time after the expiration of AEDPA's statute of limitations.

### A. Counter Argument

It is true that the AEDPA provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in state custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The attorney for the Respondent further's states, "If a claim is not filed within the one-year statute of limitations, it must be dismissed. See **Akrawi v. Booker**, 572 F.3d 252, 260 (6th Cir. 2009)".

It is also true that when Petitioner filed his original writ of Habeas Corpus the court clerk received and docketed petitioner's petition on March 20, 2015, but because of the "prison mailbox rule", the petition is considered filed the dated petitioner signed and dated the petition and given to prison officials even if received and docketed on a latter date. **Williams v. Birkett**, 670 F.3d 729, 732 n.1 (6th Cir. 2012);

- 3 -

**Hudson v. Martin**, 68 F. Supp. 2d 798, 800 n.2 (E.D. Mich.1999).

The Petitioner alleged in his original habeas corpus petition raising the following three claims:

I. The evidence was insufficient to support the jury's verdict of guilt on the criminal sexual conduct charges;

II. The verdict was against the great weight of the evidence;

III. The petitioner's due process right to a fair trial was violated by the denial of his motion to introduce evidence of the complaining witness's prior sexual history and claims of pregnancy.

The petitioner exhausted his state court remedies on those claims I-III, presented in his original petition during the course of his direct appeal. However, there was a fourth claim described in his motion to stay that was not presented to the state courts, due to the ineffective assistance of his appellate counsel. It should be noted upon the initial filing, but after the filing of petitioner's motion to stay he discovered other potential claims that required exhausting. Petitioner requested this court to stay and hold his petition in abeyance while he exhausts his state court remedies on these other additional claims, that, for unspecified reasons, his trial and appellate counsel was ineffective.

It is also true that when this Court granted its "stay and abey" order it stated that Petitioner had filed his habeas petition with only 11 days remaining in the statute of limitations.

The respondent's argument that petitioner's statute of

limitation must fail because the doctrine of exhaustion of state remedies requires state prisoners to "fairly present' their claims as federal constitutional issues in the state courts before raising those claims in a federal habeas corpus petition. See **28 U.S.C. § 2254(b)(1)(A),(c)**; **O'Sullivan v. Boerckel**, 526 U.S. 838, 844 (1999); **McMeans v. Brigano**, 228 F.3d 674, 680-81 (6th Cir. 2000); **Rust v. Zent**, F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process, including a petition for discretionary review to a state supreme court. See **O'Sullivan**, 526 U.S. at 845, 847. A prisoner "'fairly presents' his claims to the state court by citing a portion of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." **Levine v. Torvik**, 986 F.2d 1506, 1516 (6th Cir. 1993); see also **Prather v. Rees**, 822 F.2d 1418, 1420 (6th Cir 1987)(holding that "[o]rdinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations"). Petitioner had no choice but to present each ground to the State Circuit Court and both Michigan appellate courts before seeking federal habeas corpus relief. **Wagner v. Smith**, 581 F.3d 410, 414 (6th Cir. 2009); **Mohn v. Bock**, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002); see also **Hafley v. Sowders**, 902 F.2d. 480, 483 (6th Cir. 1990). It is well understood, that petitioner bears the burden of showing that his state court remedies have been exhausted. **Rust, 17 F.3d at 160.**

It is true, that the filing of a federal habeas corpus petition does not suspend the running of the one-year limitations period under **28 U.S.C. § 2244(d)(2)**. See **Duncan v. Walker**, 533 U.S. 167, 181-82 (2001). However, the Supreme Court's decision in Duncan does not prevent district courts from "retain[ing] jurisdiction over a meritorious claim and stay[ing] proceedings pending the complete exhaustion of state remedies," or from "deeming the limitations period tolled for [a habeas] petition as a matter of equity." Id. at 182-83 (Stevens,J., concurring).

The Supreme Court nonetheless has caution that a stay is "available only in limited circumstances," such as "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in the state court," the unexhausted claims are not "plainly meritless," and petitioner is not "engaged[d] in abusive litigation tactics or intentional delay," **Rhines v. Weber**, 544 U.S. 269, 277-78 (2005).

The Sixth Circuit has advised that it is preferable for a district court to dismiss the unexhausted claims, retain jurisdiction over the exhausted claims, and stay proceedings pending exhaustion where to do otherwise would jeopardize the timeliness of a subsequent petition. See **Griffin v. Rogers**, 308 F.3d 647, 652 & 652n1 (6th Cir. 2002); see also **Palmer v. Carlton**, 276 F.3d 777, 781 (6th Cir. 2002)(finding it "eminently reasonable" to dismiss unexhausted claims in a habeas petition and stay proceedings on the remaining claims pending exhaustion of the state court remedies). The court of appeals recently reiterated this point: and is essentially the same argument that

is consistence with the petitioner. Which states:

> "[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics ... the district court should stay, rather than dismiss, the mixed petition." **[Rhines v. Weber**, 544 U.S.] at 278, 125 S. Ct. 1528. This is because "[i]n such circumstances, ... the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." Id.; see also **Wagner**, 581 F.3d at 419 (considering a mixed habeas petition and "not[ing] that Petitioner's claims, particularly those unexhausted claims, are not 'plainly meritless,'" so "assuming Petitioner's claims, particularly the unexhausted claims, are not 'plainly meritless,'" so "assuming Petitioner can show good cause for failing to present these claims to the state court in the first instance, we see no reason why the district court should not grant a 'stay and abeyance' while Petitioner exhausts in state court, should Petitioner opt against dismissing his unexhausted claims." (citation and footnotes omitted)).

The Michigan Court Rules provide a process by which the petitioner may raise his unexhausted claims. The petitioner may file a motion for relief from judgment under Subchapter 6.500 of the Michigan Court Rules, which allows the trial court to appoint counsel, seek a response from the prosecutor, expand the record, permit oral argument, and conduct an evidentiary hearing on the petitioner's claim. The petitioner may appeal the trial court's disposition of his motion for relief from judgment to the Michigan Court of Appeals and the Michigan Supreme Court, and he may thereafter file a petition for writ of certiorari in the United States Supreme Court. To obtain relief in state court, he will have to show cause for failing to raise his unexhausted claims on direct review and resulting prejudice or a significant

possibility of innocence. See Mich. Ct. R. 6.508(D)(3). However, the petitioner having to make a similar showing to this court concluding that there was a state remedy to exhaust. As such, this court warns by stating:

> The statute of limitations under **28 U.S.C. § 2244(d)(1)**
> should give petitioner cause for concern. The Michigan
> Supreme Court denied the petitioner's application for
> leave to appeal on December 23, 2013. That decision
> became final on March 23, 2014, when the time during
> which the petitioner could have filed a petition for a
> writ of certiorari in the United States Supreme Court
> expired. The one-year limitations period commenced on
> the following day, March 24, 2014. See **Bronaugh v.**
> **Ohio,** 235 F.3d 280, 284-85 (6th Cir. 2000)(holding that
> the last day on which a petitioner can file a petition
> for writ of certiorari in the United States Supreme
> Court is not counted toward the one-year limitations
> period applicable to habeas corpus petitions).

This Court goes on to say, "The petitioner filed the present petition on March 16, 2015, eleven months and twenty days after his conviction became final". It should be noted that this court after review of petitioners motion to stay realizes petitioner only had at this time only a 11 day window to file a motion for relief from judgment when it stated:

> "His motion to stay indicates that he has not yet filed
> any motion for relief from judgment as to his new
> unexhausted claims in the trial court".

A curious statement by this court and also an improbability when it goes on to say,

> "Once the state trial court resolves any prospective
> motion that he may file, the petitioner has 21 days
> from the date of the state trial court's decision to
> appeal the trial court's ruling. Mich. Ct. R. 6.509(A),
> 7.205(A)(1)."

This court goes on to say, "If the Court does not toll the limitations period during the pendency of the state court proceedings, than the applicable one-year limitations period likely will have expired and any subsequent habeas petition filed by him would be untimely, by the time that the state court resolves any appeal from the trial court's denial of his second motion for relief from judgment. The respondent has not opposed the petitioner's request for a stay of proceedings.

There are some faulty reasoning with the respondent's reasoning excluding but not limited to, a couple of procedural error in quantitate as follows:

**First:**

* This court did not place a time limit to file petitioner's first and only 6.500 motion for relief from judgment into the trial court but instead, it inferred a 21 day time limit to file an application of appeal into the Michigan Court of Appeals once a decision was made at the trial court level. Under the Michigan Court Rules, 7.205 (a)(1).

* The error in reasoning is, (even if it is meant to be literal), most if not all, schooled license attorneys could not make this deadline, and petitioner was filing an application for leave to appeal on (collateral review) (which allows a 6 month time period) as there is no right to the Michigan Court of Appeals on collateral review, appeal, it's by leave only. MCR 7.205(G)(1)(2).

**Secondly:**

* This court was well aware of Petitioner's remaining 11 days when granting its "stay and abey" order of petitioner's prior filed motion and Habeas Corpus petition. Petitioner's remaining 11 days on the statute of limitations must have been at issue as it was commented on and included the exact nature of tolling the limitations period during the pendency of the state court proceedings.

* Accordingly, for some unknown reason this court was/is under the incorrect assumption that this was petitioners second successive motion for relief from

judgment, when it fact, it was petitioners first and only motion for relief from judgment.

At the time of petitioner's motion to stay there was no opposition from the respondent challenging the tolling of the statute of limitations concerning the "stay in abeyance petition while petitioner returns to the state court to exhaust his unexhausted claims" therefore, as written all so well in the Assistant Attorneys General argument and answer/response in his opposition to petitioner's amended petition for write of habeas corpus, "This claim is therefore now abandoned. See **Sommer v. Davis**, 317 F.ed 686, 691 (6th Cir. 2003)(holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief). Applying the same standard equally with respects to the alleged procedural bars that preclude habeas review.

At the time of petitioner's motion to hold his petition in abeyance petitioner alleged three claims in his original petition that were exhausted, but had other claims that were not, describing only a few to satisfy the meaning, '"not appear to be "plainly meritless,"' **Wagner v. Smith**, 581 F.3d 410, 419 (6th Cir. 2009). In order to show cause petitioner asserted the reason for the new claims was due to the alleged ineffective assistance of his appellate counsel. Id. at 419, n4 & 5. In this courts 2015 (29, of April), opinion and order, it is clear to this court that petitioner was not engaged in any "intentionally dilatory tactics", and determined that in cases with unexhausted claims it

is appropriate to stay pending exhaustion of state court remedies, warning petitioner of reasonable time limits on petitioner's trip back to the state court's. **Rhines**, 544 U.S. at 278. This court went on and imposed time limitations within which he must proceed with his state court post-conviction proceedings. See **Palmer v. Carlton**, 276 F.3d 777 (6th Cir. 2002). Accordingly, it was the **ORDER** of this court that the petitioner's motion to hold the petition in abeyance [dkt.#2] is **GRANTED**. Furthermore, this court **ORDERED** this case **CLOSED** for statistical purposes to avoid administrative difficulties. It was also **ORDERED** that petitioner must file an amended petition in this Court within **twenty-eight (28) days** after the conclusion of the state court proceedings. It also stated, "if petitioner files an amended petition, the respondent shall file an answer addressing the allegations in the petition in accordance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Court within **fifty-six (56) days** thereafter.

Petitioner's claims IV, V, IX, X were timely filed because it's the proper procedure whether petitioner filed one issue of ten issues. It all "relates back" to his original habeas corpus petition pleading(s) and motion to hold in abeyance while allowing petitioner to asserts new unexhausted grounds for relief supported by the facts that may differ in concept but are exactly "same core operative facts." Respondent is under the misconception that petitioners amended habeas petition does not relate back (and thereby escapes AEDPS's one-year time limits). Federal Rules of Civil Procedure 15. The same facts remain today

as they did the day petitioner filed his motion to stay and abey. The presentation of new, and/or to present unexhausted claims is the whole purpose of the motion to stay and abey in the first place, to wait until petitioner to compleate another round of court proceeding i.e., circuit court, and two appellate court's to argue a procedural bar as untimely amended petition concern the AEDPA's limitation that must relate back to his original petition because there is no where else to relate in back to.

Petitioner claims has nothing to do with the AEDPA's statute of limitations period nor is it jurisdictional because the clock stopped when his original pleadings, Writ of Habeas Corpus under 28 U.S.C. 2254 was filed and the granting of his motion to hold/stay and abey his petition until he want back to the state court's to exhaust his other claims because the petitioner did follow this court's order exactly as they were written with the one exception of the 21 days between the circuit court and the court of appeals. It is the petitioner's contention that the only thing untimely is the response and objections of the respondent that should have been argued/presented at the time of petitioner's original filing of his habeas petition and motion to stay and abey.

The respondent said it best when he pointed out that the AEDPA's limitations period is not jurisdictional, so it may be tolled for equitable reasons. **Holland v. Florida**, 560 U.S. 631, 645049 (2010). A petitioner is entitled to equitable tolling only if he establishes the following:

> "(1) that he has been pursuing his rights diligently, and

(2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (citation omitted).

The equitable tolling doctrine apples to cases involving statute of limitations in fact **equitable tolling** will not bar a claim if petitioner, despite diligent efforts, did not discover the injury until after the limitations period had expired.

Again the respondent is correct, when he states:

"A petitioner has the burden of demonstrating entitlement to equitable tolling. **Allen v. Yukins**, 366 F.3d 396, 401 (6th Cir. 2004).

Petitioner's responsibility, "obligation" was fulfilled at the time of his filing the original writ of habeas corpus and his motion to stay and abey noting else at that time was required. The argument presented by the respondent is to little to late his argument should have been made in the pendency of his original habeas and motion to stay and abey was being decided. Respondents argument must fail for the simple reason petitioner exercised due diligence in pursuing § 2254 relief that supports equitable tolling. Petitioner has followed this courts ORDERS to the best of his ability, and to say otherwise is speculative because petitioner was in fact going back to the Michigan Court's to exhaust his unexhausted claims proving with credible evidence of actual innocence "tenable actual-innocence". **McQuiggin**, 133 S.Ct. at 1928. Consequently, this Court should find that consideration of claims IV,V,IX, and X, claims should be considered and not

barred on account that the petitioner claims constituted "equitable tolling", and the AEDPA's statute of limitations period had not expired.

Nevertheless, petitioner believes that this court would not have granted his motion to stay and abey it it thought it was easier to deny relief on the merits. At the time of granting the stay and abey motion this court must have foreseen petitioner's habeas and argument to hold in abeyance of having legal worth. Petitioner will now briefly state why the respondent is wrong in his analysis and proclaim why his claims have merit and should not be barred by the complexities of the statute of limitations.

### B. Exhaustion

The respondent is not arguing that any of petitioner's habeas claims are barred by the failure to exhaust a claim for which a state court remedy still existed.

### C. Procedural Default

The Respondent asserts that Petitioner has procedurally defaulted claims VI,VII, and VIII (ineffective assistance of trial counsel) as explained therein his ANSWER IN OPPOSITION TO AMENDED PETITION FOR WRIT OF HABEAS CORPUS.

Petitioner's counterclaim as discussed and written explanation herein.

### D. Non-retroactivity Doctrine

The Respondent is not arguing that any of Petitioners habeas claims are barred by the non-retroactivity doctrine.

### STATEMENT OF THE CASE

### A. Trial Facts

- 14 -

When this case was on direct appeal Petitioner's Appellate Attorney filed the following statement of facts:

### STATEMENT OF FACTS
### Pre-Trial Motion Regarding Plaintiff's Prior Claims
### of Sexual Conduct and False Accusations

Attached as **Exhibit A** is the defendant's Motion in Limine as to Evidence of the Victim's Sexual Conduct Pursuant to MCL 750.520j, along with a memorandum of law in support. Of note is the fact that the motion provided that the "defendant's testimony in this regard would establish that the parties had sexual relations in the same manner and under similar circumstances of the sexual conduct at issue in this criminal charge."

In particular, the motion reflects that the subject witnesses John Moten and Leroy Shepard would have testified regarding unsupported accusations made by the alleged victim in connection with a prior sexual encounter with Mr. Shepard. The purpose would have been to utilize the testimony for impeachment purposes and that the Shepard testimony would show "the victim's 'ulterior motive for making a false charge or prior false accusation of rape.'" See **Exhibit A**, pp. 4.

The defendant indicated--as the reason for the motion--that the proffered witnesses--John Moten, Leroy Shepard and James Maxwell would testify concerning the plaintiff's prior conduct with regard to sexual activity. As to Mr. Moten and Mr. Shepard in particular, they also had knowledge of the alleged victim making improper and unfounded accusations in relation to sexual intercourse. Specifically, it was alleged that the victim was spreading untruths about Mr. Maxwell impregnating her (upon

information and belief, the alleged victim never bore a child of that intercourse) and, furthermore, that Mr. Maxwell was stalking her though none of the allegations had ever proved to have any factual foundation whatever.

Following argument, the Court merely issued a blanket denial (see **Exhibit B**) of the motion in its entirety. A Motion for Reconsideration of the November 9, 2011 Order was filed on or about November 23, 2011. (see **Exhibit C**). The Court modified its prior ruling and allowed "the defendant to testify as to his past sexual relations with the complaining witness. All other relief requested by the Defendant is denied." (See **Exhibit D**).

None of the witnesses whose testimony was the subject of the motion in limine testified at trial.

### Trial Testimony

At trial the defendant was convicted of one count of Third Degree Criminal Sexual Conduct along with two counts of Fourth Degree Criminal Sexual Conduct. A person is guilty of Criminal Sexual Conduct in the 3rd Degree under MCL 750.520(d)(1)(b) if the person engages in sexual penetration with another person and if force or coercion is used to accomplish the sexual penetration. As a corollary, Criminal Sexual Conduct in the 4th Degree is sexual conduct with another person where any of the following exist:

(b) coercion is used to accomplish the sexual contact.

### Testimony of Bobbie Suette Johnson

At trial, the testimony of the complaining victim was that

- 16 -

the petitioner grabbed the victim's hands and—just himself —
—pulled down her pants, squeezed her breasts (such that she was
allegedly bruised all over her chest) and was able to penetrate
her from behind. (Tr., Vol II, pp 40-41). Similarly, she
testified that he continued to grab her hands, touch her vagina
and pull her clothes off. (Tr., Vol II, p 42).

There was not a single witness who corroborated the testimony
of the victim surrounding the claimed assault.

Ms. Johnson testified that she did not run because "he had my
hands behind my back." ** (Tr., Vol II, p 52). Yet, she conceded
that she was never tied up nor hit by the defendant.(Tr., Vol II,
p 52). Aside from later testimony concerning the presence of one
bruise on Ms. Johnson's wrist, there was no evidence of any force
upon her by the defendant.

Ms. Johnson testified that she yelled at the time of the
claimed assault. In particular, she testified:

> "Q. And you knew Mr. Allen was upstairs, correct?
>
> A. Yes.
>
> Q. You didn't yell out for Mr. Allen, did you?
>
> A. I didn't know Mr. Allen's name.
>
> Q. Well, you didn't yell out hey help me or anything, did you?
>
> A. Who—I mean I'm yelling in the basement, no, stop. If you can't here that then what?
>
> Q. So you were yelling in the basement? I'm just asking, were you—
>
> A. I'm supposed to be quiet and not try to defend myself?
>
> THE COURT: Ma'am, were you yelling or not?
>
> A. Yes, I was yelling. No one helped me.
>
> Q. Okay. So you were yelling.
>
> A. I'm ready to get off the stand.

Q. Ma'am, I know this is difficult, but we have to get through this. So you were yelling?

A. Yes.

Q. And what were you yelling?

A. Like I said, no and stop.

Q. And you were yelling this loud enough for somebody upstairs to hear you?

A. I was yelling. My throat was hurtin'.

Q. You were yelling and your throat was hurting because you were yelling?

A. Yes."

(Tr., Vol II, pp. 53-54).

Ms Johnson later testified about the small dimensions of the house noting:

"Q. Okay. So the house is small enough for you to hear the front door knock when you're down in the basement, correct?
A. Yes."

(Tr., Vol II, p 54).

Ms. Johnson later testified that the defendant-after this alleged assault-came to her house and remained there watching television for three to four hours.(Tr., Vol II, p. 52). There was no testimony that-following the alleged assault-she asked him to leave her home or that she told anyone during that time about the claimed assault.

### Trial Testimony of James Allen

The transcript reflects that a witness, James Allen--the "painter"--was present at the house the whole time and never heard any screaming at all.(Tr., Vol II, p 161). Moreover, when Ms. Johnson returned from the basement, she was not upset or crying in any way(Tr., Vol III, pp. 162-163).

He testified:

"Q. Was she crying?

A. No.

Q. Did she appear upset?

A. No.
Q. Was she mad?

- 18 -

A. No."

(Tr., Vol III, pp. 162-163).

## Trial Testimony of Charles Ingram

For his part, the defendant voluntarily submitted to cross examination and gave testimony in the trial at which time he indicated that he and Ms. Johnson engaged in a "mutual business proposition."(Tr., Vol III, p 20). Following that, the defendant went back to work and returned upstairs approximately 20 minutes later at which time Ms. Johnson was chatting with other people at the house. Ms. Johnson left the house approximately 1-1/2 to 2 hours after the completion of the sexual act between the times of 5:30 p.m. and 6:00 p.m.(Tr., Vol III, pp 29, 31).

Though the alleged victim denied prior sexual relations with the defendant(Tr., Vol II, pp 46-47), the defendant made clear that the parties did have a sexual relationship. In particular, the defendant testified as follows:

> "Q. What did happen?
>
> A. What did happen was that there was a mutual business proposition.
>
> Q. Okay?
>
> A. And when that happened, we both agreed.
>
> Q. So did you have sex with her at that point in time?
> A. Yes, I did.
>
> Q. And how long had you been in the basement before you had sex with her?
>
> A. Maybe 10 minutes.
>
> Q. And how long total were you in the basement with her before she went upstairs?
>
> A. Thirty minutes.
>
> ...
>
> Q. Just tell us what you did.
>
> A. What I did is that--
>
> Q. And what she did.

A. Okay, and what she did. She began to rub on my penis. I was rubbing, touching on her breast, while I was kissing her neck.

Q. Okay?

A. And then when she zipped my pants down and I pulled mine down little bit and I pulled hers down a little bit, she went and leaned over the counter, and when she did that, I continued to foreplay, but I never put it in yet. So then I slapped her on the butt with it.

Q. With your penis?

A. Yeah. And she was twitching and then I kept teasing her, then she reached and put it in.

Q. She reached around and grabbed your penis and put it in?

A. And put it in."

(Tr., Vol III, pp 20-22).

On continued direct examination the defendant was questioned about his prior relationship with the alleged victim noting:

"Q. You had indicated earlier that you had sex with Bobbie Johnson on a couple other occasions, is that correct?

A. Yes, sir.

Q. On how many previous occasions prior to July 10, 2008?

A. There had been two times that we had a sexual contact with each other. Consensual.

Q. If this occurred on July 10, 2008, when were those other two incidents as best you can recall?

A. Maybe about a month, month and a half, probably two at the most."

(Tr., Vol III, pp 42-43).

The defendant indicated that he paid her for sexual activity but not intercourse. (Tr., Vol III, p 45). The initial occasion testified to at pages 46-47 of the transcript involved the alleged victim reportedly masturbating on his leg. He testified that he paid her $15.00 for that act. (Tr., Vol III, pp 46-47).

At trial, there were only two witnesses who had any first hand knowledge of the sexual encounter - - Bobbie Johnson and defendant Charles Ingram. Yet the testimony of the alleged victim's father, Bobbie Johnson, Sr., was illuminating as a

description of why the rape charges were brought. In particular, the defendant himself was asked whether or not the alleged victim was upset. The defendant testified (Tr., Vol III, p 36) that Ms. Johnson did seem upset at some point when she went upstairs but he had no idea why.

### Trial Testimony of Bobby Johnson, Sr.

For his part, however, Bobbie Johnson, Sr., provided the trier of fact the reason for Ms. Johnson being upset. He testified as follows:

"Q. You told Charles what you did?

A. Yes.

Q. What kind of work you had done that day?

A. Yes.

Q. You were waiting to get paid and you didn't get paid?

A. Didn't get paid. That's why I knew something was wrong.

Q. So how long were you there at that point in time?

A. About an hour and a half.

Q. An hour and a half then too?

A. Yes. Then I went home.

Q. So you are on the front porch, you and Vercie and your daughter, is that correct?

A. Everybody was outside.

Q. Okay, who is everybody?

A. Everybody, the painter, James, he was outside, Vercie, my daughter, Willie everybody outside. It was hot that day.

Q. And were you joking around outside?

A. We was asking questions and all that but wasn't really anybody making no jokes or nothin'.

Q. Just hanging out, talking?

A. Hanging out, trying to get paid."

(Tr., Vol II pp 83-85).

Mr. Johnson further testified:

> "Q. And at no time did your daughter tell you anything unusual had happened?
>
> A. No.
>
> Q. And so you are there an hour an a half, Vercie and your daughter are there 30-45 minutes?
>
> A. Yeah.
>
> Q. And Mr. Ingram is still there as well?
>
> A. Yes."
>
> (Tr., Vol II, p 85).

Mr. Johnson never testified that he was told by his daughter at that time that she had been raped. Furthermore, he testified (Tr., Vol II, pp 88-89) that he spent a considerable time with his daughter and Mr. Ingram at his home watching a movie at which point the alleged victim made no complaint of the defendant having raped her.

## Other Witness Testimony

Other trial witnesses had very little knowledge of the claims of the alleged victim. Dr. Michelle McLean was allowed to provide hearsay testimony at page (Tr., Vol II, pp 114-115) that the alleged victim claimed that she had been raped and described the claimed assault. Despite a timely objection, the Court indicated "Noted. Go ahead and answer the question."(Tr., Vol II, pp 114).

The emergency physician saw no scrapes, no bleeding or any injuries other that a claimed contusion the size of a fingertip. (Tr., Vol II, pp 118). Notably absent was any evidence of any trauma to the plaintiff's vaginal area. (Tr., Vol II, pp 119-120).

- 22 -

No witness corroborated any of the following facts:

    a. Force with regard to the contact or penetration;

    b. Coercion used to accomplish the sexual contact or penetration.

    c. That the alleged victim ever screamed or showed any signs consistent with having just been assaulted in the hours immediately following her intercourse with the defendant.

Indeed, the record was silent regarding any coercion save the purported testimony of Ms. Johnson alone.

Following proofs and deliberation, the jury returned a verdict of guilty on three counts of criminal sexual conduct, third degree and fourth degree.

The defendant filed a motion for directed verdict of acquittal following conviction pursuant to MCR 6.419 as well as a motion for new trial via MCR 6.431.

## A. Procedural History

Petitioner was convicted of one count of CSC III and two counts of CSC IV. The trial court sentenced him to 7-15 years for CSC III and to concurrent terms of 13-14 months for the CSC IV convictions.

Following his convictions and sentence, Petitioner filed with the trial court a motion for directed verdict of acquittal and a motion for a new trial. The trial court denied the Motion. **People v. Ingram**, No. 08-031317-FH, Saginaw County Cir. Ct. Order (Oct. 3, 2012).

Petitioner subsequently filed a claim of appeal in the Michigan Court of Appeals, which raised his first three habeas claims.

The Michigan Court of Appeals affirmed Ingram's convictions in an unpublished opinion. **People v. Ingram**, 2013 WL 3717793.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same three claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. **People v. Ingram**, 840 N.W. 2d. 336 (Mich. 2013).(Unpublished table decision).

Petitioner did not appeal to the United States Supreme Court.

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. **People v. Ingram**, 840 N.W.2d 336(Mich. 2013)(unpublished table decision).

Petitioner did not appeal to the United States Supreme Court. Rather, he filed a petition for habeas relief with this Court on March 20, 2015, along with a motion to stay so petitioner could exhaust a claim that trial counsel had been ineffective.(Docs. 1-2.)

This Court entered an order staying the case so petitioner could return to state court and exhaust additional claims.(Doc. #5); **Ingram v. Barrett**, 2015 WL 1966470(E.D. Mich. April 29, 2015).

Petitioner returned to the trial court and filed a motion for relief from judgement, which contained habeas claims IV-X and a claim that Michigan's Sex Offender Registration Act unconstitutional as cruel and unusual punishment.

The trial court denied the motion for relief from judgment on the merits. **People v. Ingram**, No. 08-031317-FH. Saginaw County Cir. Ct. Order(Dec. 1, 2015).

Petitioner next filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal because defendant failed to establish that the trial court erred in denying his motion for relief judgment. **People v. Ingram**, No. 332098 Mich. Ct. App. Order(July 25, 2016).

Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Mich. Ct. Rule 6.508(D). **People v. Ingram**, 888 N.W.2d 97(Mich. Jan. 5, 2017)(unpublished table decision).

On February 3, 2017, petitioner returned to this Court with a motion to lift the stay and with an amended petition.(Docs. #6-7) This Court subsequently entered an order lifting the stay and requiring the State to respond to the petitioner's amended petition.(Doc. #9)

### Habeas Corpus Standard of Review

#### Pursuant to 28 U.S.C. § 2254

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2254, in reviewing a state prisoner's application for writ of habeas corpus, this court shall not grant the petition on any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(1) and (2).

Additionally, accordance with § 2254(e)(1), the applicant bears the burden of rebutting the presumption of correctness by clear and convincing evidence where the State court made a finding on the factual issues.

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established law. **Franklin v. Francis**, 144 F.3d 429 (6th Cir. 1998). Additionally, federal habeas courts must presume the correctness of state court factual determinations. **Cremeans v. Chapleau**, 62 F.3d 167, 169 (6th Cir. 1995).

The Supreme Court in **Williams v. Taylor**, 529 U.S. 362 (2000), announced the rule of analysis that federal courts are to use when reviewing a petition for habeas corpus pursuant to § 2254. The Supreme Court held that the AEDPA has stated that clearly established federal law is the law that is established at the time the state conviction became final. Id.,, 529 U.S. at 380.

In defining the contrary to requirement, the Supreme Court stated there are two separate analysis a federal court of review most use that, if found apparent, would justify the granting of a habeas petition. The first analysis under the contrary to clause

states that [a] state court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. Id.,, at 405.

Secondly, the **Williams** Court stated [a] state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different form our precedents. Id.,, at 406.

The court in determining the unreasonable application of clearly established Federal Law clause state:

> That state-court judgements, must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated. Our difference is as to the cases in which, at first blush, a state-court judgment seems entirely reasonable, but thorough analysis by a federal court produces a firm conviction that that judgment is infected by erroneous judgment is unreasonable within the meaning of the Act even though that conclusion was not immediately apparent. Id.,, at 389.

The Supreme Court further stated the statute directs federal courts to attend to every state-court judgment with the utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. Id., And, that after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody...violates the Constitution, that independent judgment should prevail. Id.,

In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced'. **Wiggins v. Smith**, 539 U.S. 510, 520 (2003) (citing **Lockyer v. Andrade**, 538 U.S. 63, 76 (2003)).

The Supreme Court in **Panetti v. Quarterman**, ____ U.S. ___; 127 S. Ct. 2842 (2007), has upheld the ruling that the AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied'. Id.,, 127 S. Ct. at 2858 (citing **Carey v. Musladin**, 549 U.S. ___; 127 S. Ct. 649, 656 (2006)). In this ruling, the Supreme Court has granted the federal courts more latitude in making the determination, without identical facts, that a defendant's constitutional rights have been violated during the state court criminal proceedings.

Lastly, the Supreme Court has reemphasized that a state court's application of clearly established law is acceptable, even if it is likely incorrect, so long as it is reasonable. **Wright v. Van Patten**, ___ U.S. ___, 128 S. Ct. 743 (2008).

### COUNTER ARGUMENT

1. **Petitioner rejects Respondent's claim and asserts that the evidence to support his convictions was insufficient and objectively unreasonable under the highly deferential standard of Jackson v. Virgina and 28 U.S.C. § 2254.**

Petitioner's original habeas claim is that the evidence supporting his convictions was insufficient.

Respondent simply states that the Michigan Court of Appeals

considered this claim and denied it on the merits stating that the court used the correct constitutional standard in a manner that was not objectively unreasonable: And simply reiterated the PER CURIAM. Unpublished Opinion. (July 16, 2013)(**People v. Ingram**, 2013 WL 3717793, at*1-2

This merits adjudication neither contradits nor commands unreasonably applies Supreme Court Case law.

Due process commands a directed verdict of acquittal when sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt is lacking if the evidence presented by the prosecution is insufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. **Lemmon** @ 633-634.

Under the circumstances, no reasonable juror could have concluded that Petitioner could have committed the sexual assault as described. Simply put, the petitioner did not have enough available hands to constrain the arms of the victim as she described the alleged assault as it was taking place. At one time she testified before the jury that her arms were being restrained (both arms), her breasts were being forcibly touched and/or beaten such that bruising remained and - - throughout this claimed onslaught - - her pants were forcibly pulled down and she was forcibly entered from behind.

The record is without any evidence to support the determination that the petitioner could have restrained the plaintiff in this way, in this manner and for the length of time as would have been required to have constituted a sexual assault

in the form of either penetration by force - - resulting in a claimed commission of the crime of criminal sexual conduct in the 3rd Degree or, for that matter, offensive and forceful sexual touching or the commission of criminal sexual conduct in the 4th Degree.

## Clearly Established Federal Law

The "clearly established Federal law" at issue when petitioner asserts the evidence was insufficient is **Jackson v. Virginia**, 443 U.S. 307, 318(1979). See **Coleman v. Johnson**, 132 S. Ct. 2060, 2062(2012)(per curiam)(**Jackson** applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)).

On direct review the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is: "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." **Jackson**, 443 U.S. at 318. Due process requires that "each element of a crime be proved to the jury beyond a reasonable doubt." **Alleyne v. United States**, 133 S. Ct. 2151, 2156(2013). The **Jackson** inquiry, however does not require a court to "ask itself whether it believes the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson**, 443 U.S. at 318-19(internal citation and footnote omitted)(emphasis in original). The Supreme Court recently characterized the **Jackson** standard as requiring a defendant to show that the jury's verdict "was so

insupportable as to fall below the threshold of bare rationality." **Coleman**, 132 S. Ct. at 2065. Even at the first level of deference, the **Jackson** standard is so demanding that "[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." **Davis v. Lafler**, 658 F.3d 525, 534 (6th Cir. 2011)(en banc).

When a federal habeas petition challenges the sufficiency of the evidence to support a state-court conviction, AEDPA establishes a standard that is "twice-deferential." **Parker v. Matthews**, 132 S. Ct. 2148, 2152(2012). Accord **Nali v. Phillips**, 681 F.3d 837, 841(6th Cir. 2012)(explaining that the **Jackson** standard "requires deference to the jury's verdict and to the state court's review of that verdict."). This twice-deferential standard "does not permit a habeas court to engage in a fine-grained factual parsing." **Coleman**, 132 S.Ct. at 2064.

Under AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently"-the factfinder at trial and the state court on appellate review-than a reviewing court on habeas review. **Brown v. Konteh**, 567 F.3d 191, 205 (6th Cir. 2009). Petitioner understands that even if a federal court finds that no rational jury could have convicted the defendant, the habeas court must "still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id.

For the same reasons that Petitioner should be entitled to a directed verdict of acquittal, in the state court on appellate review and now, on habeas review given that the verdict was

against the great weight of the evidence, the petitioner is at a minim entitled to a new trial.

As set fort above, the petitioner could not have committed the offenses in the manner in which the victim described them.

A verdict may be vacated when the evidence does not reasonably support it and it was more likely that the result of cause outside the record, such as passion, prejudice, sympathy, or some other extraneous influence was the cause of the verdict. **People v. Plummer**, 229 Mich App 293, 306; 581 NW2d. 753 (1998).


In this instance, the petitioner's own testimony --specifically, the cross examination - - focused upon the eliciting of testimony regarding the petitioner's status as a womanizer or personage attractive to women. To put another way, the cross examination focused on womanizing behavior which would lead the jury to dislike the petitioner - - so much so as to cause them to convict him of crimes that the People did not prove him beyond a reasonable doubt to have committed. Specifically, the petitioner's own testimony in this regard focused the jury on the issues of prejudice, passion or some other extraneous influence against him. For reasons set forth in **Plummer**, supra, such an evaluation by the jury was improper.

For these reasons, the verdict resulted in a miscarriage of justice.

Finally, the respondent argues that on habeas review, a federal court does not reweigh the evidence or reassess the credibility of the witnesses whose demeanor was observed at

trial. **Marshall v. Lonberger**, 459 U.S. 422, 434(1983). "It is the province of the factfinder...to weigh the probative value of the evidence and resolve any conflicts in the testimony." **Neal v. Morris**, 972 F.2d 675, 679 (6th Cir. 1992).

Analysis

### A. Insufficient Evidence Existed to find that All Elements of the Charged Offenses were Proven Beyond a Reasonable Doubt

At the time of trial the People must prove every element of the charged offense beyond a reasonable doubt. **People v. Gadson**, 348 Mich 307, 83 NW2d 227 (1957).

Under the circumstances, no reasonable juror could have concluded that Charles Ingram could have committed the sexual assault as described. Simply put, the defendant did not have enough available hands to constrain the arms of the victim as she described the alleged assault as it was taking place. At one time she testified before the jury that her arms were being restrained(both arms), her breasts were being forcibly touched and/or beaten such that bruising remained and--throughout this claimed onslaught--her pants were forcibly pulled down and she was forcibly entered from behind.

The record is without any evidence to support the determination that Petitioner could have restrained the plaintiff in this way, in this manner and for the length of time as would have been required to have constituted a sexual assault in the form of either penetration by force - - resulting in a claimed commission of the crime of criminal sexual conduct in the 3rd

degree or, for that matter, offensive and forceful sexual touching or the commission of criminal sexual conduct in the 4th degree.

Moreover, the description of Ms. Johnson's claimed yelling aline discredits the claim that a reasonable juror could have found that the prosecution demonstrated forceful and/or unwanted physical touching. It is worth noting that:

1. Miss Johnson testified she screamed to the point that her throat became sore, noting that it was "hurtin'";

2. The house was small enough that a knock at the front door was capable of being heard clearly;

3. Yet, Jannes Allen testified that he heard no screaming, nor was the alleged victim upset, mad nor had she been crying.

## B. The Defendant is Entitled to a Directed Verdict of Acquittal

Due process commands a directed verdict of acquittal when sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt is lacking. **People v. Hampton**, 407 Mich 354, 366; 285 NW2d 284(1979). If the evidence presented by the prosecution in the light most favorable to the prosecution, up to the time the motion is made, is insufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt, a directed verdict or judgment of acquittal must be entered. **Id** at 368.

As noted above, the prosecution never proved beyond a reasonable doubt that the intercourse was caused by restraint, force or coercion. As such, the People did not prove guilt beyond a reasonable doubt. The motion for directed verdict was

improperly denied.

II.

### THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL

#### Analysis

#### A.   The Verdict was Against the Great Weight of the Evidence

> A conviction may be considered to be against the great weight of the evidence where the evidence preponderates heavily against the verdict and serious miscarriage of justice would otherwise result should the verdict remain undisturbed. **People v. Lemmon**, 456 Mich 625, 642; 576 NW2d(1998).

> A verdict may be vacated when the evidence does not reasonably support it and it was more likely that the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence was the cause of the verdict. **People v. Plummer**, 229 Mich App 293, 306; 581 NW2d, 753 (1998).

In this instance, the defendant's own testimony--specifically, the cross examination--focused upon the eliciting of testimony regarding the defendant's status as a womanizer or personage attractive to women. Put another way, the cross examination focused on womanizing behavior which would lead the jury to dislike the defendant--so much so as to cause them to convict him of crimes that the People did not prove him beyond a reasonable doubt to have committed. Specifically, the defendant's own testimony in this regard focused the jury on issues of prejudice, passion or some other extraneous influence against him. For reasons set forth in **Plummer, supra,** such an evaluation by the jury was improper.

For these reasons, the verdict resulted in a miscarriage of justice.

# APPENDIX A

Memorandum of Law

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

PEOPLE OF THE STATE OF MICHIGAN

    Plaintiff,

v.

CHARLES DEXTER INGRAM,

    Defendant.

_____/

SAGINAW COUNTY PROSECUTOR
Attorney for Plaintiff

SMITH BOVILL, P.C.
DAVID D. HOFFMAN (P42025)
Attorney for Defendant
200 St. Andrews Rd.
Saginaw, MI  48638
(989) 792-941
_____/

Case No. 08-31317-FH

HON. ROBERT L. KACZMAREK



A TRUE COPY
Susan Kaltenbach, Clerk

## MOTION IN LIMINE AS TO EVIDENCE OF THE VICTIM'S SEXUAL CONDUCT PURSUANT TO MCL 750.529J

NOW COMES Defendant, CHARLES D. INGRAM, by and through his attorney, DAVID D. HOFFMAN, and for his Motion In Limine states as follows:

1. That Defendant is charged with Count 1-CSC-Third Degree-Force or Coercion; Count 2-CSC-Fourth Degree; Count 3-CSC-Fourth Degree.

2. That the alleged victim is Bobbie Suette Johnson, d/o/b 10-23-90.

3. That Defendant has just discovered evidence related to the victim's sexual conduct which is clearly material to this case.

4. That in preparing for trial the Defendant and his counsel have learned from several witnesses, subpoenaed for trial, information as it relates to the victim's sexual conduct.

5. That Defendant has also revealed to his counsel new evidence as it relates to the victim's sexual conduct with Defendant which is relevant and material pursuant to MCL 750.520j (1) (a).

6. That Defendant's current counsel was retained approximately 1 ½ -2 months following Circuit Court Arraignment.

7. That this evidence of victim's sexual conduct will come out at trial of this matter through several different witnesses, both prosecution and defense and the Court will have to deal with it at that time if it is not dealt with prior to trial.

8. That Defendant is requesting an in camera hearing on the admissibility of this evidence pursuant to MCL 750.520j.

WHEREFORE Defendant, CHARLES D. INGRAM, respectfully requests an Order allowing the evidence of the victim, Bobbie Johnson's sexual conduct, opinion and reputation evidence of that sexual conduct to be admissible at trial following an in camera hearing before this Court, plus such other and further relief as is just and equitable.

Dated: July 20, 2011          Respectfully requested,

_____
DAVID D. HOFFMAN (P42025)
Attorney for Defendant

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on _7-20_____ 20_11_

By: ☒ U.S. Mail    ☐ FAX
     ☒ Hand Delivered   ☐ Overnight Courier
     ☐ Certified Mail    ☐ Other:

Signature: _____

PREPARED BY:
SMITH BOVILL, P.C.
BY:  DAVID D. HOFFMAN(P42025)
Attorney at Law
200 St. Andrews Rd.
Saginaw, Michigan  48638
(989) 792-9641

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

PEOPLE OF THE STATE OF MICHIGAN

    Plaintiff,

v.

CHARLES DEXTER INGRAM,

    Defendant.

_____/

Case No. 08-31317-FH

HON. ROBERT L. KACZMAREK

SAGINAW COUNTY PROSECUTOR
Attorney for Plaintiff

SMITH BOVILL, P.C.
DAVID D. HOFFMAN (P42025)
Attorney for Defendant
200 St. Andrews Rd.
Saginaw, MI 48638
(989) 792-941

_____/

## MEMORANDUM OF LAW

    The Defendant filed a Motion in Limine pursuant to MCL 750.520j. (Michigan's Rape Shield Law) to admit certain evidence of the victim, Bobbie Sue Johnson's, past sexual conduct, opinion evidence of that conduct and reputation evidence of that sexual conduct.

    A hearing was held on Friday, October 14, 2011 before the Court whereby Defendant made an offer of proof as to three (3) witnesses who would testify as to victim's past sexual conduct and/or reputation and opinion evidence of that conduct. Defendant's written Motion in Limine also raised past sexual conduct between Defendant and victim which Defendant wished to admit at trial. Defendant's testimony in this regard would establish that the parties had sexual relations in the same manner and in similar circumstances to the sexual conduct at issue in this criminal charge.

    Defendant would argue to this Court that, pursuant to the relevant caselaw, clearly the past conduct between Defendant and victim would be admissible at trial. See Michigan v. Perkins,

424 Mich 302, 379 NW2d 390 (1986) <u>Perkins</u> held that evidence of prior sexual conduct between complainant and defendant was admissible where events on two (2) occasions in question were similar, and excluding testimony would have deprived defendant of defense of consent. Defendant in the instant case is relying on the defense of consent. See also <u>People v. Hackett</u>, 421 Mich 338, 365 NW2d 120 (1984). Further, MRE 404 (a)(3) provides an evidentiary exception in a criminal sexual conduct case, allowing for admission of evidence of the alleged victim's past sexual conduct with the defendant pursuant to MCL 750.520j (1)(a) "Evidence of the victim's past sexual conduct with the actor". Statute attached herto at <u>Exhibit 1</u>.

As to the victim's past sexual conduct with third parties, Defendant would cite to this Court <u>People v. Ivers</u>, 459 Mich 320, 587 NW2d 10 (1998) and <u>People v. Hackett</u>, 421 Mich 338, 365 NW2d 120 (1984). The <u>Ivers</u> Court held that complainant statements about wanting sex and finding a guy were relevant to complainant's state of mind and the ultimate issue of consent, and those statements were not excludable because they did not, "amount to or reference specific (sexual) conduct".

The three (3) witnesses Defendant sought trial testimony from were:

1. John Moten, former police officer and Supervisor of Leroy Shepard, who had discussions with the victim about her stalking Mr. Shepard.
2. Leroy Shepard, security guard, who had casual sex with the victim after knowing her for one (1) week; wrongfully accused him of impregnating her; and then stalking him;
3. James Maxwell, (a listed prosecution witness) who would testify that the victim "would hit on anyone" and tried to "get with him".

Pursuant to <u>Ivers</u>, Mr. Maxwell's testimony should be admissible as those statements did not "amount to or reference <u>specific</u> (sexual) conduct". Pursuant to <u>Hackett</u>, Mr. Shepard's testimony should be admissible as his statements regarding the victim's conduct with him go to the victim's, "ulterior motive for making a false charge or prior false accusations of rape".

Defendant would respectfully request that this Court enter an Order allowing the testimony of Defendant as to past sexual conduct between Defendant and victim Bobbie Sue Johnson, and allowing testimony of witnesses, John Moten, Leroy Shepard and James Maxwell, as above stated for the reasons stated above.

Dated: October 20, 2011

Respectfully requested,

DAVID D. HOFFMAN (P42025)
Attorney for Defendant

PREPARED BY:
SMITH BOVILL, P.C.
BY:  DAVID D. HOFFMAN(P42025)
Attorney at Law
200 St. Andrews Rd.
Saginaw, Michigan  48638
(989) 792-9641



MICHIGAN LEGISLATURE

96th Legislature Regular Session
Michigan Compiled Laws Complete Through PA
Compiled through Act 166 of 2011

| Home | Register | Why Register? | Login | New! | Help |

**Navigation**
⇦ Documents ⇨
MCL Chapter Index
Chapter 750
Act 328 of 1931
328-1931-LXXVI
Section 750.520j

**Legislature**
Bills
Calendars
Committees
Committee Bill Records
Committee Meetings
Concurrent Resolutions
Initiatives
Joint Resolutions
Journals
Legislators
Public Acts (Signed Bills)
Resolutions
Session Schedules
Basic Legislative Search
Adv Legislative Search
**Laws**
Often Req Laws
Req Repealed Acts
Basic MCL Search
Advanced MCL Search
Public Act MCL Search
Michigan Constitution
Chapter Index
Executive Orders
Executive
Reorganization
Historical Documents
MCL Tables
**More**
Color Picker
Publications
Related Sites
Syndication

## Section 750.520j

friendly link  combine MCL sections

### THE MICHIGAN PENAL CODE (EXCERPT)
Act 328 of 1931

**750.520j Evidence of victim's sexual conduct.**

Sec. 520j.

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

**History:** Add. 1974, Act 266, Eff. Apr. 1, 1975
**Constitutionality:** This section, the rape-shield law, is not unconstitutional. People v Arenda, 416 Mich 1; 330 NW2d 814 (1982).In Michigan v Lucas, 500 US 145; 111 S Ct 1743; 114 L Ed2d 205 (1991), the United States Supreme Court held that the Michigan Court of Appeals had erred in adopting a "per se rule" that the notice-and-hearing requirement of Michigan's rape-

*Exhibit 1*

Bills ☐ ☐

Meetings ☐ ☐

Laws ☐ ☐

Recently Viewed

mcl 750 520j

shield law violated the Sixth Amendment to the United States Constitution in all cases where it was used to preclude evidence of past sexual conduct between a rape victim and a defendant (see People v Lucas, 160 Mich App 692; 408 NW2d 431 (1987)). The Court found that the statute "serves legitimate state interests in protecting against surprise, harassment, and undue delay. Failure to comply with this requirement may ... justify even the severe sanction of preclusion."

**Compiler's Notes:** Section 2 of Act 266 of 1974 provides:"Saving clause."All proceedings pending and all rights and liabilities existing, acquired, or incurred at the time this amendatory act takes effect are saved and may be consummated according to the law in force when they are commenced. This amendatory act shall not be construed to affect any prosecution pending or begun before the effective date of this amendatory act."

© 2009 Legislative Council, State of Michigan

Acceptable Use Policy      Privacy Policy      Copyright Infringement      Comment Form

The Michigan Legislature Website is a free service of the Legislative Internet Technology Team in cooperation with the Michigan Legislative Council, the Michigan House of Representatives, and the Michigan Senate  The information obtained from this site is not intended to replace official versions of that information and is subject to revision. The Legislature presents this information, without warranties, express or implied, regarding the accuracy of the information, timeliness, or completeness. If you believe the information is inaccurate, out-of-date, or incomplete or if you have problems accessing or reading the information, please send your concerns to the appropriate agency using the online Comment Form in the bar above this text.

# APPENDIX B

Opinion and Order

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v                            File No.  08-31317-FH-2

CHARLES DEXTER INGRAM,

        Defendant.

_____/

### OPINION AND ORDER

At a session of said Court, held at the Court House in the City of Saginaw, County of Saginaw, and State of Michigan, this 9th day of November, 2011.

PRESENT:  THE HONORABLE ROBERT L. KACZMAREK, Circuit Judge.

Defendant files this Motion in Limine as to Evidence of the Victim's Sexual Conduct Pursuant to MCL 750.529(j).

The Court, after reviewing the authorities cited by the parties, denies the motion.

IT IS SO ORDERED.

_____
ROBERT L. KACZMAREK,
JUDGE, 10TH JUDICIAL CIRCUIT

A TRUE COPY
Susan Kaltenbach, Clerk

COUNTY OF SAGINAW

SUSAN KALTENBACH
COUNTY CLERK

Governmental Center
111 S. Michigan Avenue
Saginaw, Michigan 48602
Phone 989-790-5251 • TDD 989-790-5568



HAZEL L. LEWIS, DEPUTY COUNTY CLERK                    Phone 989-790-5544

March 6, 2013

Michigan Court of Appeals
925 W. Ottawa St.
Lansing, MI  48909

RE:  **People v Devon Shivers COA #305426 L.C. #10-035084-FC**
     **People v Forfeiture COA #310106 L.C. #08-900017-CF**
     **People v Deon Lindsey COA #310503 L.C. #11-036235-FH**
     **People v Jimmie Harrison COA #311288 L.C. #11-036152-FC**
     **People v Charles Ingram COA #309035 L.C. #08-031317-FH**
     **People v John Beemer COA #313602 L.C. #11-036498-FH**

Dear Sir or Madam:

Per your request enclosed are complete file(s), transcript(s) and register of actions on the
above referenced case(s).

For further assistance, please do not hesitate to contact me.

Respectfully,

Hazel L. Lewis,
Deputy County Clerk

Enclosure
cc: file

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES DEXTER INGRAM,

     Petitioner,               Case No. 2:15-11074

-vs-                     Honorable DAVID M. LAWSON

JOE BARRETT,

     Respondent.

| | |
|---|---|
| Assistant Attorney General<br>Bruce H. Edwards,<br>Criminal Appellate Division<br>P.O. BOX 30217,<br>Lansing, Michigan 48909 | Petitioner, In Pro se<br>CHARLES DEXTER INGRAM #825646<br>Cooper Correctional Facility<br>3100 Cooper Street<br>Jackson, Michigan<br>49201 |

Notice of Response to Respondent's Opposition to Amended
Petition For Write Of Habeas Corpus
Under the Filing of Rule 5 Materials
Index of Record
Certificate of Service

TO: Assistance Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI 48909

PLEASE TAKE NOTICE that a copy of Petitioner's Response to Respondent's Rule 5 Material In Opposition to Amend Petitioners Writ Of Habeas Corpus is hereby being served upon the Clerk of the United States District Court for the Eastern District of Michigan, Southern Division, as set forth in the attached index of Record.

                Respectfully submitted,

                *Charles Ingram*
                Charles Ingram, #825646
                Cooper Street Correctional Facility
                3100 Cooper St.
Dated: April, 17, 2017      Jackson, MI 49201

- i -

## Index of Record

2:15-CV-1174

1. Saginaw County Docket Sheet 08-031317-FH

2. 08-21-2008 Preliminary Examination Transcript

3. 09-15-2008 Circuit Court Arraignment Tr

4. 10-15-2008 Motion Transcript

5. 11-29-2011 Jury Trial Tr I

6. 11-30-2011 Jury Trial Tr II

7. 12-01-2011 Jury Trial Tr III

8. 12-02-2011 Jury Trial Tr IV

9. 01-30-2012 Sentencing Transcript

10. 10-01-2012 Motion Transcript

11. Michigan Court of Appeals 309035

12. Michigan Supreme Court 147683

13. 06-01-2015 Motion For Relief From Judgment

14. 09-17-2015 Answer to Motion for Relief From Judgment

15. 09-30-2015 Reply to Answer to Motion Fro Relief From Judgment.

16. 12-01-2015 Opinion and Order of the Court denying MRJ

17. Michigan Court of Appeals 332098

18. Michigan Supreme Court 154300

## Certificate of Service

I hereby certify that on April $\underline{17}$, 2017, I Charles Ingram Petitioner state that on this day he served, Respondent a true and accurate copy of Petitioner's Response to Respondent's Answer in Opposition to Amend Petitioner's Writ of Habeas Corpus, by a person in State Custody to the following address:

> Assistance Attorney General
> Criminal Appellate Division
> P.O. Box 30217
> Lansing, MI 48909
> (517)373-4875
> Edwardsb8@michigan.gov
> P34983

Pursuant to 28 U.S.C § 2254, and Rule 5 Material, In conformity with MDOC Rules, Policies, and Procedures through the Expedited Legal Mail System by placing the same into the hands of Prison Officials in a properly addressed unsealed envelop, and "sealed after inspection", with postage full prepaid, and assuming Prison Facility Officials placed same into the U.S. Mail Box, in the City of Jackson. And (1) Original and (1) true accurate copy of the same was mailed to:

> HONORABLE DAVID M. LAWSON, MAGISTRATE JUDGE DAVID R. GRAND, at:
>
> U.S. District Court, For The Eastern District of Michigan, Theodore Levin United States Courthouse, 231 W. Lafayette Blvd., Detriot, MI 48226.

Respectfully submitted,

*Charles Ingram*

Charles Ingram, #825646
Cooper Street Correctional Facility
3100 Cooper St.
Jackson, MI 49201

Dated: April, $\underline{17}$, 2017

CHARLES DEXTER INGRAM #825646
Petitioner, In Pro se
Cooper Street Correctional Facility
3100 Cooper Street
Jackson, Michigan 49201

April 17, 2017

TO: HONORABLE DAVID M. LAWSON, & MAGISTRATE JUDGE DAVID R. GRAND,
U.S. District Court,
Eastern District of Michigan,
Theodore Levin United States Courthouse,
231 W. Lafayette Blvd.,
Detriot, MI 48226.


RE: **PETITIONERS RESPONSE TO RESPONDENTS ANSWER IN OPPOSITION TO
AMENDED PETITION FOR WRIT OF HABEAS CORPUS Case No. 2:15-
11074.**

Dear Court Clear,

Please find, (1) Original Pleading, "Response by Petitioner's
Charles Ingram, Notice of Response to Respondent's Opposition to
Amended Petition For Writ of Habeas Corpus Under Rule 5
Materials, Index of Record and Proof of Service."

Would you please be so kind to file in your usual manner. If
there happens to be any deficiency' please notify and return to
the address cited above and Petitioner will amend/correct and
return as soon as possible.

Thank you for your time and consideration in this matter.


Respectfully submitted,

Charles clngram

Charles Ingram, #825646
Cooper Street Correctional Facility
3100 Cooper St.
Jackson, MI 49201

Dated: April, 17, 2017

## R E L I E F

For the reasons stated above and herein, this case demands review and Petitioner's Writ of Habeas Corpus should issue as the means of justice warrant it.

This Court should also GRANT any discovery, evidentiary hearing, bond, oral argument, and any other relief this court deems appropriate including, but not limited to, a certificate of appealability.

Respectfully submitted,

Charles Ingram, #825646
Cooper Street Correctional Facility
3100 Cooper St.
Jackson, MI 49201

Dated: April, 17, 2017



