UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES DEXTER INGRAM,

                Petitioner,                       Case Number 15-11074

v.                                        Honorable David M. Lawson

JOE BARRETT,

                Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Charles Ingram was convicted by a jury in the Saginaw County, Michigan circuit court of various counts of criminal sexual conduct for sexually assaulting the daughter of a coworker. He filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the sufficiency of the evidence, the fairness of his trial, the propriety of convicting him of multiple counts in light of the Double Jeopardy Clause, the scoring of the state advisory sentencing guidelines, and the performance of his attorney. The warden responded, arguing that some of the claims are barred by procedural defenses and the rest lack merit. Because the state courts adjudicated Ingram's claims consistent with controlling federal law, and none of them support issuance of the writ, the Court will deny the petition.

I.

The Michigan Court of Appeals succinctly summarized the facts of the case in its opinion on direct appeal as follows:

> Defendant's convictions stem from the sexual assault of "BJ" in the basement of a home that defendant was renovating. BJ testified that her father worked for defendant and that she sometimes accompanied her father and was paid for work that she performed. According to BJ, defendant grabbed her hands and held them behind her back while he pulled her pants down, squeezed her breasts, and vaginally

penetrated her with his penis.  Defendant testified that the sexual encounter was consensual.

*People v. Ingram*, No. 309035, 2013 WL 3717793, at *1 (Mich. Ct. App. July 16, 2013).

Ingram was convicted of one count of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(b), and two counts of fourth-degree criminal sexual conduct, Mich. Comp. Laws § 750.520e(1)(b).  He was sentenced to concurrent prison terms totaling seven to fifteen years.  His convictions were affirmed on appeal. *Id., lv. den.* 495 Mich. 915, 840 N.W.2d 336 (2013) (Table).

Ingram then filed a petition for a writ of habeas corpus, which was held in abeyance so that he could return to the state courts to exhaust additional claims.  He filed a post-conviction motion for relief from judgment, which was denied. *People v. Ingram,* No. 08-031317-FH (Saginaw Cty. Cir. Ct. Dec. 1, 2015).  The Michigan appellate courts denied leave to appeal. *People v. Ingram*, No. 332098 (Mich. Ct. App. July 25, 2016), *lv. den.* 500 Mich. 926, 888 N.W.2d 97 (2017) (Table).

On February 14, 2017, this Court reopened the case and permitted Ingram to file an amended habeas petition.  In his original and amended petitions, he seeks habeas relief on the following grounds:

> I. Petitioner claims that there was insufficient evidence to justify a reasonable juror concluding that all elements of the crime of criminal sexual conduct in the third degree and fourth degree was established beyond a reasonable doubt and all the state courts demonstrated an unreasonable application of precedential federal law set forth in *Jackson v. Virginia*.

> II. Petitioner's verdict was against the great weight of the evidence and the state courts demonstrated an unreasonable determination of the facts of the case.

> III. Petitioner's rights to a fair trial were infringed upon by the improper denial of the motion *in limine* relative to the introduction of evidence of the victim's prior sexual history with third parties and in particular her prior claims of pregnancy.

Pet. at 3-4.

IV. Petitioner's conviction is a product of one being incarcerated whom is actually innocent [as] the acts that occurred petitioner holds where [sic] consensual and that petitioner did not have the malice intent or the mens rea of the act that he was convicted of. The prosecution failed to establish these specific act [sic] of intent causing a miscarriage of justice also some testimony was a product of perjury and resulting in a *Napue* violation and one was convicted by the violation and denied a fair trial.

V. Defendant's convictions should be vacated and he should be granted a new trial because he was subjected to double jeopardy in violation of the Fifth Amendment of the United States Constitution, where he was subjected to multiple prosecutions for the same offense.

VI. Defendant did not receive the effective assistance of trial counsel when counsel failed to object when the court gave a jury instruction that permitted the jury to find him guilty even if they were not in unanimous agreement on each charge.

VII. Defendant did not receive the effective assistance of trial counsel when counsel failed to impeach complainant with her preliminary examination testimony, when she testified at his trial, and when counsel failed to point out the discrepancies between complainant's preliminary examination test[i]mony and her trial testimony, where it came out at trial, at her closing argument.

VIII. Defendant did not receive the effective assistance of trial counsel when counsel failed to do a proper investigation and present facts contained in documents that negated complainant's version of events, and therefore, she should not have been believed.

IX. The trial court improperly scored the offense variable 13 and prior record variable 7 making the guidelines incorrect in violation of Defendant's Sixth and Fourteenth Amendment rights.

X. Defendant did not receive the effective assistance of appellate counsel when counsel did not raise the issues he now raises, on defendant's appeal of right, and thus, he fulfills the "cause" requirement of MCR 6.508(D)(3)(a).

Amend. Pet. at 7, 11, 18, 26, 42, 52, 55.

The warden filed an answer to the petition raising the defenses of procedural default and untimeliness. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722,

750 (1991). The untimeliness argument references the requirement that a habeas petitioner must bring his claims within one year of the date his conviction becomes final. *See* 28 U.S.C. 2244(d)(1). In this case, although the petition was stayed in this Court, Ingram did not file his post-conviction motion in state court until after the one-year statute of limitations expired. The warden reasons that those new claims are all untimely because there was not limitations period to toll by the time the post-conviction was filed. *See Hargrove v. Brigano*, 300 F.3d 717, 718 n.1 (6th Cir. 2002) (holding that a state court post-conviction motion that is filed after the limitations period expires cannot toll that period because there is no period remaining to be tolled); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) (holding that the AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings). The Court finds it unnecessary to address these procedural questions. They are not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default); *Smith v. State of Ohio Dept. of Rehab.*, 463 F.3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). These procedural defenses will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state

court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Even though the state appellate courts did not give full consideration to some of Ingram's federal claims on appeal, AEDPA's highly deferential standard for reviewing a habeas petitioner's constitutional claims applies here. The petitioner must show that "the state court decision was

'contrary to, or involved an unreasonable application of, clearly established Federal law' or involved an 'unreasonable determination of the facts.'" *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (quoting 28 U.S.C. § 2254(d)). That standard applies "even when a state court does not explain the reasoning behind its denial of relief." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016). "Under [*Harrington v. Richter*, 562 U.S. 86 (2011)], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 99). There is nothing in this record that suggests a basis for rebutting that presumption. *See Johnson v. Williams*, 568 U.S. 289, 303 (2013).

## A.

Ingram first contends that the evidence was not sufficient at trial to prove that the sexual encounter was accomplished with force or coercion, which is an essential element of both third-degree and fourth-degree criminal sexual conduct. The Michigan Court of Appeals found sufficient evidence that Ingram forced himself on the woman. *Ingram*, 2013 WL 3717793, at *2.

That court's determination of the record evidence was reasonable and consistent with federal law. It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). And on direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). That rubric "must be applied with explicit reference to the substantive elements

of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, a person is guilty of third-degree criminal sexual conduct if he or she engages in sexual *penetration* with another person and force or coercion is used to accomplish the sexual penetration. Mich. Comp Laws § 750.520d(1)(b). A person is guilty of fourth-degree criminal sexual conduct if he or she engages in sexual *contact* with another person and force or coercion is used to accomplish the sexual contact. Mich. Comp Laws § 750.520e(1)(b). The Michigan Legislature defined "force or coercion" to include the following:

> (1) When the actor overcomes the victim through the actual application of physical force or physical violence;
> (2) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats; or
> (3) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat.

Mich. Comp Laws § 750.520b(1)(f)(i)-(iii).

Proof of physical violence is sufficient but not necessary. *People v. Malkowski*, 198 Mich. App. 610, 613, 499 N.W.2d 450, 451 (1993). The term "force" includes the exertion of strength or power on another person. *People v. Premo*, 213 Mich. App. 406, 409, 540 N.W.2d 715, 717 (1995) (holding that the "[d]efendant's pinching of the victims' buttocks satisfies the force element of the statute") (quoting *The Random House College Dictionary: Revised Edition,* 515). The term

"coercion" includes circumstances that create a reasonable fear of dangerous consequences. *People v. McGill*, 131 Mich. App. 465, 470-472, 346 N.W.2d 572, 575-76 (1984).

The court of appeals held that the record contained abundant evidence to permit a jury to find that element beyond a reasonable doubt. This Court agrees. The victim testified that Ingram grabbed her hands and placed them behind her back. Trial Tr. at 40-41, 52, ECF No. 11-6, PageID.332, 335. Ingram proceeded to push the victim over a cabinet. He squeezed the victim's breasts and touched her vaginal area over her clothes. Ingram then pulled down the victim's pants with force before placing his penis into the victim's vagina from behind. *Id.* at 40-42, PageID.332. This evidence, if believed, is sufficient to establish that Ingram used force to accomplish the sexual assault. The appellate court's determination faithfully applies *Jackson*.

Ingram also insists that the evidence was insufficient because the victim's testimony was uncorroborated or not credible. That argument is a nonstarter. The testimony of a single, uncorroborated prosecuting witness is sufficient to support a conviction, as long as the prosecution presents evidence that proves the elements of the offense beyond a reasonable doubt. *Brown v. Davis,* 752 F. 2d 1142, 1144-1145 (6th Cir. 1985). The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's sexual assault conviction. *See United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000) (citing *Gilbert v. Parke,* 763 F. 2d 821, 826 (6th Cir. 1985)).

Moreover, a federal habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier

of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).

Ingram is not entitled to relief on his first claim.

## B.

Ingram raised a related claim in the Michigan Court of Appeals — that his conviction is against the great weight of the evidence — and he raises it again here. That court rejected Ingram's contention, which focused mainly on the victim's credibility. That argument has no traction here, because it is a claim grounded in state law, and a federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).

## C.

Ingram next contends that he was denied the right to a fair trial when the judge denied his motion to allow evidence of the victim's prior sexual history with other men. He was prepared to offer testimony (1) "from a man who claimed to have had a sexual encounter with BJ, who then falsely accused him of impregnating her and began stalking him"; (2) from the same "man's supervisor that he had spoken with BJ about the stalking"; and (3) "from a third man claiming that BJ 'would hit on anyone' and had 'tried to get with him.'" *Ingram*, 2013 WL 3717793, at *3.

The trial court refused to allow those witnesses to give that evidence on the authority of Michigan's Rape Shield Law. That statute prohibits the introduction of evidence describing a sexual assault victim's past sexual conduct either in the form of specific acts, opinions, or

reputation, unless the evidence satisfied a balancing test and fell into at least one of two categories: "(a) Evidence of the victim's past sexual conduct with the actor[, or] (b) Evidence of specific instances of sexual activating showing the source or origin of semen, pregnancy, or disease." Mich. Comp. Laws § 750.520j(1).

The court of appeals agreed that the testimony was barred by the statute. It also determined that the evidence was not relevant to the issue whether the victim consented to the specific sexual encounter with Ingram. *Ingram*, 2013 WL 3717793, at *3.

It is well established that an accused person has a constitutional right to confront the state's witnesses and to call witnesses of his own to establish a defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967); s*ee also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (citations omitted). There are limitations, however, including those imposed by state evidence codes. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996); *see also Rock v. Arkansas,* 483 U.S. 44, 55 (1987) (stating that "[t]he right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process'") (quoting *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973)).

The Supreme Court has recognized a state's "legitimate interest" in enforcing the protection of victims that Rape Shield statutes offer. *See Michigan v. Lucas*, 500 U.S. 145, 149-50 (1991) ("The Michigan statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.") (addressing the statute's notice requirement). The question, then, is whether the trial judge improperly balanced Ingram's interest in presenting his defense witnesses against the state's

interest in protecting a sexual assault victim from a probing inquiry into her sexual history with individuals other than Ingram. Obtaining a positive answer to that question presents Ingram with a formidable task. The Supreme Court has acknowledged a "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. And the Supreme Court affords trial judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Ibid.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Under AEDPA's highly deferential standard of review, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

Ingram has not done so here. As the court of appeals aptly noted, the victim's willingness to engage in sex with other men on other occasions had little bearing on whether she consented to have sex with Ingram on this occasion. The determination that Ingram's proposed evidence was only marginally relevant is entitled to substantial deference. It is true that the state courts never articulated on the record a rationale that balanced the interests protected by the Rape Shield Statute against Ingram's Confrontation Clause rights. "[B]ut the absence of such reasoning does not dilute the degree of deference this Court must accord the state court's ultimate ruling. 'Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.'" *Fuller v. Lafler*, 826 F. Supp. 2d 1040, 1057 (E.D. Mich. 2011), *aff'd sub nom. Fuller v. Woods*, 528 F. App'x 566 (6th Cir. 2013) (quoting *Harrington,* 562 U.S. at 98).

It is worth noting that Michigan's Rape Shield statute does *not* preclude admission of evidence of prior false or unsubstantiated rape allegations. *See Mathis v. Berghuis*, 90 F. App'x 101, 107 (6th Cir. 2004). But none of Ingram's proposed witnesses would have testified that the victim falsely accused them of sexually assaulting her. Any prior sexual encounters between the victim and other men would have been only remotely relevant to establishing a motive for her to falsely accuse Ingram of sexual assault.

The state courts did not unreasonably apply the Supreme Court's Confrontation Clause jurisprudence. He is not entitled to relief on this claim.

## D.

In his fourth claim, Ingram argues that he should be released because he is actually innocent since the victim committed perjury. That argument suffers from two maladies: there is no Supreme Court case that acknowledges a free-standing claim of innocence in a habeas proceeding outside the death penalty context, and Ingram's evidence of perjury consists only of the victim's prior inconsistent statements, which the jury has considered already.

First, there is no recognized federal constitutional claim that allows relief for the denial of a new trial, even when the motion is based on newly-discovered evidence, and even coupled with a claim of actual innocence, at least in non-capital cases. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *See also Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases). As the Supreme Court explained, "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact." *Herrera*, 506 U.S. at 400.

Second, there is no new evidence suggesting that the victim committed perjury. It is well established that a prosecutor's knowing use of perjured testimony violates the Due Process Clause. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But to prevail on such a claim, a defendant must show that the witness's statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). Mere inconsistencies in a witness's testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. And the fact that a witness contradicts herself or changes her story in not enough either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).

The only evidence that Ingram offers to support his perjury claim is the fact that the victim's trial testimony was inconsistent with her preliminary examination testimony and her prior statements to the police. He has not offered any conclusive evidence that the victim's testimony at trial was false. The jury was made aware of the victim's prior inconsistent statements and chose to credit her trial testimony. Ingram is not entitled to relief on his fourth claim.

E.

Next Ingram argues that his multiple criminal sexual conduct convictions violate the Double Jeopardy Clause because the conduct occurred during a single episode. He raised that claim in his post-conviction motion, and the trial court rejected it. The court referencing the Fifth Amendment, proceeded to analyze the issue by comparing the elements of the two crimes — third- and fourth-degree criminal sexual conduct — to see if they amounted to the same offense. That analytical test is sometimes referred to as the *Blockburger* test, after *Blockburger v. United States*, 284 U.S. 299, 304 (1932). That test "inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional

punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger*, 284 U.S. at 304.

The trial court correctly noted that the third-degree criminal sexual conduct requires proof of sexual penetration, while fourth-degree criminal sexual conduct requires proof of sexual contact. Because each crime requires proof of a fact that the other does not, the crimes are different and conviction of both does not offend the Double Jeopardy Clause. That decision faithfully applied controlling federal law.

The Double Jeopardy Clause of the Fifth Amendment states that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. The Clause is "applicable to the States through the Fourteenth Amendment," *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988), "[a]nd it protects against multiple punishments for the same offense," *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

> What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."

*Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir .2014) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Although the Double Jeopardy Clause "protects against multiple punishments for the same offense," *Pearce*, 395 U.S. at 717, it does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . , the question under the Double Jeopardy Clause whether punishments are 'multiple' is

essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Therefore, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Hunter*, 459 U.S. at 368-69.

Here, the state court determined that the legislature intended that discrete offenses will warrant separate punishments. The trial court found that "the evidence shows Defendant was convicted of three CSC offenses arising out of three separate criminal acts: his sexual penetration of the victim, his sexual contact of the victim's breasts, and his sexual contact of her vagina. Defendant was not convicted of the 'same offense' twice, as each act for which he was convicted constitutes a separate offense." *People v. Ingram*, No. 08-031317-FH, at * 5–6 (Saginaw Cty. Cir. Ct. Dec. 1, 2015). The Court accepts that factual finding as correct. 28 U.S.C.A. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."). Under those facts, none of Ingram's three convictions were for the "same offense."

That those convictions arose from the same criminal episode is of no moment here. The Double Jeopardy Clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984).

Ingram is not entitled to relief on his fifth claim.

F.

Next, Ingram argues that the trial court incorrectly scored several offense variables when calculating his sentencing guidelines. Claims that arise out of a state trial court's sentencing decision are not cognizable upon federal habeas review unless the petitioner can show that the sentence exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001); *see Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *see also Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue, which is not cognizable on federal habeas review). Ingram's sentence is within the statutory maximum for third-degree criminal sexual conduct. *See* Mich. Comp. Laws §§ 750.520d(2). A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

A defendant is entitled to be sentenced on the basis of accurate information. A sentence violates due process of law if the trial court relied on extensively and materially false information, which the defendant had no opportunity to correct through counsel. *See Townsend,* 334 U.S. at 741 (holding that a sentence based on "assumptions concerning [defendant's] criminal record which were materially untrue" violated due process). But to obtain relief, a petitioner must show that his sentence was "founded at least in part upon misinformation of constitutional magnitude." *United States v. Tucker,* 404 U.S. 443, 447 (1972).

Ingram's arguments challenging the offense variable scoring are not at all based on the information considered by the trial court, but instead he takes issue with the court's application of those variables to the facts found at trial. Ingram has not identified any inaccurate information

that might bring his claim within the scope of a federal constitutional violation. He is not entitled to relief.

G.

Next, Ingram contends that he was denied the effective assistance of counsel because his trial attorney failed to object to a jury instruction that, he believes, allowed the jury to find him guilty of more than one charge even if they were not in unanimous agreement on each of the three separate charges (claim VI); failed to cross-examine the victim about the inconsistencies in her several statements (claim VII); and failed to conduct a thorough investigation and produce documents showing that the victim's accusations were false (claim VIII). These claims were presented for the first time in Ingram's post-conviction motion.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White v. Woodall*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) ). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Ingram's claim that his counsel should have objected to a jury instruction falls well short of the double-deferential standard. Ingram alleges that the jury instruction permitted the jurors to find him guilty of more than one charge even if they were not in unanimous agreement on each of the three separate charges. The judge gave the following instruction to the jurors:

> The defendant is charged with three counts, that is, one count of the crime of third degree criminal sexual conduct and two counts of fourth-degree criminal sexual conduct. These are separate crimes, and the prosecutor is charging that the defendant committed all of them. You must consider each crime separately in light of all the evidence in the case.

> You may find the defendant guilty of all or any combination of these crimes or not guilty of any crime.

Trial Tr. at 115, ECF No. 11-7, PageID.411.

Ingram acknowledges that this instruction came verbatim from Michigan's pattern criminal jury instructions. *See* CJI2d 3.20. He says, however, that this instruction was defective because it permitted the jury to reach a less than unanimous verdict with respect to each count.

It is not clear how he derives that meaning from the text of that instruction. It actually tells the jury to "coinsider each crime separately." Elsewhere, the judge instructed the jurors that their verdict would have to be unanimous. Trial Tr. at 119, ECF No. 11-7, PageID.412. And the judge previously had instructed the jurors that they should consider all of his instructions together. *Id.* at 107, PageID.409.

"An attorney's failure to object to jury instructions is deficient only if the petitioner can establish that the instructions were inaccurate." *Daniels v. Lafler*, 501 F.3d 735, 743 (6th Cir. 2007). Ingram has not done so here. Defense counsel did not perform deficiently by not objecting to CJI2d 3.20 because the instruction accurately stated the law. Ingram was not prejudiced by the non-objection because the instructions in their entirety adequately informed the jurors that their verdict would have to be unanimous on each charge. The petitioner is not entitled to relief on his sixth claim.

Ingram's seventh and eighth claims display his dissatisfaction with his lawyer's efforts to attack the victim's credibility. The cross-examination technique counsel employed was prototypically a matter of trial strategy, which generally is subject to broad deference and will not support a finding of deficient performance. Federal habeas courts do not second-guess judgments of that sort. *See White*, 572 U.S. at 420; *Strickland*, 466 U.S. at 689 (cautioning that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy'") (citation omitted).

Trial counsel questioned the victim extensively during cross-examination. During the cross-examination, the victim admitted that she voluntarily went into the basement with Ingram. The victim admitted that Ingram did not have any weapons nor did he hit her. She stated that she began screaming and that the house was small enough that people could hear what was happening between the floors. She also admitted that after the assault, she asked her father's girlfriend, Vercie Cooper, not to tell anyone, including her father, about the assault. It was only much later on that the victim asked Ms. Cooper to tell her father about the sexual assault. The victim admitted that she showered before going to the hospital. The victim was confronted by counsel with her preliminary examination testimony in which she said she had no bruises, which contradicting her trial testimony. The victim denied having sex with Ingram in the past but admitted to picking out his ingrown hairs, which Ingram contended was a prelude to their prior consensual sexual encounters. Although denying a prior relationship with Ingram, the victim acknowledged that her father would have been upset had he learned she was having this type of relationship with Ingram because of the age difference.

The victim's father, Bobby Johnson, admitted that Ingram never paid him for the work that he had done on Ingram's house, which was used by counsel to argue a motive for the victim to falsely accuse Ingram of sexually assaulting her. Mr. Johnson admitted that on the day in question, he saw his daughter on the back porch of the house with some people but that she did not tell him that something was wrong. Mr. Johnson admitted that Ingram came over to his house later that night to watch television.

Vercie Cooper admitted on cross-examination that she did not observe any injuries on the victim on the day of the assault. Ms. Cooper testified that Ingram did not act unusual towards the victim later that evening when he was at the victim's father's house.

Dr. Michelle McLean was the physician who examined the victim. Dr. McLean only saw one small red contusion her. Dr. McLean saw no other injuries on the victim, nor did she find any vaginal tears or any other injuries or trauma to the victim's genital area.

Officer Timothy Fink testified that the victim had no injuries when he interviewed her.

James Allen testified that he did not hear any screaming coming from the basement, just scraping sounds, which would have been consistent with someone painting. Mr. Allen testified that when the victim came up from the basement, she did not appear to be upset or crying. Mr. Allen did not see Ingram staying close to the victim after they came upstairs.

The record amply demonstrates that defense counsel thoroughly developed the testimony intended to undermine the victim's credibility. He cross-examined her at length and pointed to inconsistencies in her testimony, her prior statements, and the other evidence adduced at trial. His performance measured up well against established professional norms. Nor has Ingram explained how any additional impeachment evidence would not have been cumulative of evidence that had already been introduced to challenge the victim's credibility. He was not prejudiced by counsel's omission of additional questions to the victim or the non-production of additional witnesses. That evidence would have been cumulative of other evidence and witnesses presented at trial in support of Ingram's claim that the victim had falsely accused him of sexually assaulting her. *Wong v. Belmontes*, 558 U.S. 15, 22-23 (2009); *see also United States v. Pierce,* 62 F.3d 818, 833 (6th Cir. 1995). In this case, the jury had significant evidence presented to it that the victim had given inconsistent statements, some of her testimony had been contradicted by other witnesses or

evidence, and of her or her father's possible motives for fabricating sexual assault charges against the petitioner. Because the jury was "well acquainted" with evidence that would have supported the petitioner's claim that the victim fabricated these charges, additional evidence in support of the petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23. The petitioner is not entitled to relief on his seventh or eighth claims.

## H.

Finally, Ingram contends that he was denied the effective assistance of appellate counsel when his appellate attorney did not raise claims IV through IX on direct appeal.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner ordinarily must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. However, it is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

This Court has already determined that Ingram's claims IV through IX lack merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of Ingram's direct appeal. Ingram is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: July 19, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 19, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---